WHITE et ux, *Appellants,*
*v.*
BELLO et ux, *Respondents.*

(Trial Court No. 84344, Case No. 24466)

556 P2d 1362

*Robert L. Abel,* Salem, argued the cause and filed the brief for appellants.

*David W. Hittle,* Salem, argued the cause for respondents. With him on the brief were Dye & Olson, Salem.

Before Denecke, Chief Justice, and Holman, Bryson, Lent and Bohannon, Justices.

BOHANNON, J. (Pro Tempore).

**BOHANNON, J.** (Pro Tempore).

This is an action to recover damages for breach of an oral agreement or agreements to reconvey real property. The cause was tried before the court without a jury. The trial judge by letter to counsel announced her decision as follows:

"It is the finding of the Court that plaintiffs have failed to establish their claim for damages. Defendants may take judgment and recover their costs."

A judgment was thereafter entered on behalf of the defendants from which plaintiffs appeal, assigning as error that the finding of the trial court is not supported by substantial evidence.

Since this was a law action tried to the court without a jury, the scope of this court's review is limited to the narrow issue of whether there is any substantial evidence to support the trial court's findings. In addition, we consider the evidence and all favorable inferences which may reasonably be drawn from such evidence in a light most favorable to the defendants. *Hassan v. Guyer,* 271 Or 349, 532 P2d 227 (1975).

This cause arises out of a somewhat complicated set of facts which for the purposes of this opinion are summarized as follows:

Sometime prior to May 29, 1971 a brother of the plaintiff Prentice F. White was arrested. The defendant Joe C. Bello who was then in the bail-bond business was contacted by some relatives of the accused and requested to furnish a bail bond to secure the brother's release pending trial. Bello did post bail for the accused and thus secured his release. As a condition of posting bail, Bello required security and for the purpose of security obtained a bargain and sale deed dated May 29, 1971 from Prentice White which purported to convey to him White's interest in 110 acres of land in Clackamas County. At the time of this conveyance this property was being purchased by

Prentice White and his wife, Vontella, on contract from a group of copartners doing business as Clack-Nomah Investments. This contract called for annual instalment payments. Vontella White did not join in the bargain and sale deed to Bello. This deed was recorded.

On February 1, 1972 the bail previously posted by Bello was forfeited because of the nonappearance of White's brother. On February 3, 1972 Bello, being concerned about his liability on the bail bond, went to the White residence and talked to both Prentice and Vontella White. He told the Whites that he had to forfeit bail and asked both of the Whites to join in giving him a new deed conveying the premises previously conveyed by Prentice White alone to Bello. The Whites acceded to this request and executed and delivered a warranty deed naming the present defendants as grantees. This deed likewise was recorded. At the time this deed was given the next annual payment under the purchase contract in the amount of $5,000 was due the following month in March.

The plaintiffs contend and the defendant Joe Bello admits that at the time the warranty deed was given the parties to the deed agreed that in the event the Bellos were unable to pay the annual instalment due in March under the Whites' purchase contract with Clack-Nomah in the amount of $5,000 defendants would reconvey the property to plaintiffs, otherwise they could keep the property as reimbursement or partial reimbursement for Bello's loss on the bail bond.

Concerning the agreement under which the warranty deed was given the defendant Joe Bello testified as follows:

'Q. Was there anything said about the purpose of the deed or what [it] was intended to do?

"A. Yeah. He said that I could do what I wanted to do with it, but there was a $5,000 payment due [in March], and if I couldn't make the payment, that he didn't want to lose it; that he would like to have it back.

[ 934 ]

"Q. Did you agree to that?

"A. Yeah. I said, 'Well, I intend to make the payment.' And in fact I had a deal going for the payment."

A few days prior to obtaining the warranty deed, Bello had commenced an action against Prentice White and others on an indemnity agreement that he allegedly had also taken from the defendants in that case as an incident to his posting of the above-mentioned bail. The fact that this action had been commenced was unknown to the plaintiffs at the time they executed and delivered the warranty deed. The action on the indemnity agreement ultimately went to trial and resulted in a directed verdict in favor of Prentice White and the other defendants in that action. At the conclusion of the indemnity case Clem Ady, who represented Bello in that action, was requested by Whites' counsel to obtain a reconveyance from Bello since the underlying obligation for which the deeds had allegedly originally been given had purportedly been nullified by the directed verdict and resulting judgment in favor of Whites that resulted therefrom. Mr. Ady agreed to do so and apparently requested and advised his client to do so but Bello either refused or failed to do so. There is also evidence that Mr. Ady agreed, as a condition of obtaining a pretrial continuance in the indemnity case, that he would obtain a reconveyance to the Whites. This representation likewise was not fulfilled.

Neither Bello nor White paid the March payment due on the Clack-Nomah purchase contract and since the purchase agreement was in default not only because of the failure to make the March payment but also because two years' taxes were unpaid, Clack-Nomah commenced a foreclosure action in the Circuit Court of Clackamas County and obtained a decree of foreclosure against Whites together with a judgment for costs and attorney fees.

Thereafter, plaintiffs on April 9, 1974 commenced the present action.

[ 935 ]

The defendants vigorously assert that any agreement on their part to reconvey being oral was within the Statute of Frauds and therefore void. However, we do not find it necessary to consider this contention.

Plaintiffs allege in their second amended complaint, among other things, that

"[a]s a result of the failure and refusal of defendants Joe C. Bello and Glenna J. Bello to execute or to arrange for the execution of reconveyances as required by the terms of the agreements, plaintiffs were unable to avoid the final decree of strict foreclosure which plaintiffs could have otherwise avoided, and as a result, plaintiffs suffered damages * * *."

Plaintiffs had the burden of proving this allegation, that is to say, they had the burden of proving by a preponderance of the evidence that the damage they claim proximately resulted from defendants' breach of their agreement to reconvey. *Parker v. Harris Pine Mills, Inc.,* 206 Or 187, 205, 291 P2d 709, 56 ALR2d 382 (1955); *Allen et ux v. McCormick,* 193 Or 604, 612, 238 P2d 220 (1952). Regarding this issue, the evidence is clear from the testimony of Prentice White that at the time the March payment came due he had $3,000 to $4,000 in the bank and $10,000 worth of cattle on his farm. On this subject Prentice White testified as follows:

"Q. Now, you did intend to make the payment though in February when you deeded it over to Mr. Bello?
"A. Yes.
"Q. Did you have the $5000.
"A. I had part of it.
"Q. How much?
"A. I don't really recall right at this time.
"Q. Well, did you have $100?
"A. I had 3 or $4000 in the bank and I had $10,000 worth of cattle on the farm."

The trial court could have found from this testimony that, even without a reconveyance from Bellos, the plaintiffs had the ability and could have met the

[ 936 ]

March payment and paid up the delinquent taxes as well. Having reached this conclusion, the trial court could have also found that any damages the plaintiffs may have sustained as a result of the foreclosure was due to their own omission or neglect. This is especially true because the plaintiffs admit they had notice from Clack-Nomah that the March payment was due and unpaid shortly after the payment came due and the foreclosure suit was not commenced until sometime in June 1972.

We are, for the reasons indicated, of the opinion that there was substantial evidence to support the judgment of the trial court.

The judgment is affirmed.