*[905]
 
 THORNTON, J.
 

 This appeal involves an action by a former public employe for 14 weeks’ severance pay, 30 days’ penalty wages, and attorney fees. The defendants are the former employer, Columbia Willamette Air Pollution Authority (CWAPA) and the five political subdivisions participating in CWAPA, namely, the City of Portland, Clackamas County, Columbia County, Multnomah County and Washington County.
 

 The trial court held that plaintiff was entitled to four weeks’ severance pay, 30 days’ penalty wages, and attorney fees. Only CWAPA was held liable for the judgment.
 

 Plaintiff assigns as error the trial court’s determination that plaintiff was entitled only to four weeks’ severance pay, and that CWAPA was solely liable for the judgment.
 

 CWAPA has cross-appealed claiming that the trial court erred in finding that CWAPA was liable for penalty wages because it wilfully failed to pay plaintiffs severance pay when due.
 

 Since this matter was tried to the court without a jury as an action at law we review the record to determine if the trial court’s decision on severance pay is supported by substantial evidence.
 
 White v. Bello,
 
 276 Or 931, 933, 556 P2d 1362 (1976).
 

 CWAPA was formed on December 6, 1967, pursuant to ORS 468.500 to 468.580 (formerly ORS 449.850 to 449.923).
 
 [1]
 
 When active its function was to cany out air pollution control programs within the territories of its participating members. It is a corporate body separate from its participating members, although the members control the CWAPA board of directors. ORS 468.520. It has the right to sue and be sued, perpetual succession, and the right to acquire, hold and dispose of property. ORS 468.515.
 

 
 *[906]
 
 Plaintiff, an attorney, was employed by the City of Portland (City) from October 1958 to June 30, 1969, when he became general counsel for CWAPA. He worked for CWAPA until June 30,1973, at which time CWAPA’s functions were assumed by the Department of Environmental Quality (DEQ) and plaintiffs employment was terminated.
 

 Under thé personnel policy of CWAPA an employe who is terminated is entitled to payment of accrued vacation and sick pay, and severance pay at the rate of one week of severance pay for each year of employment with the employer.
 

 Plaintiff contends that his employment agreement with CWAPA stipulated that his tenure with the City would be combined with his tenure with CWAPA in calculating his employment benefits. Plaintiff did receive vacation and sick pay calculated on his combined years with the City and CWAPA, but CWAPA contends that it did not agree to calculate severance pay on the same basis.
 

 Plaintiffs testimony as to his agreement with CWAPA was to the effect that the fringe benefits he was to receive from CWAPA would be equal to the benefits he had received from the City. He testified as follows:
 

 "Mr. Crofoot: One of the conditions of employment was that I would be treated as a late transfer and that all the employment benefits that had accrued to me as a Deputy City Attorney would be carried at Columbia-Willamette Air Pollution Authority as if I had been employed there for all those same number of years. Those benefits were all transferred.”
 

 Plaintiff did receive vacation and sick pay benefits commensurate with his combined years with the City and CWAPA.
 

 Plaintiff also testified that when the oral employment agreement with CWAPA was entered into with M. James Gleason, a Multnomah County Commissioner who was chairman of the CWAPA board of
 
 *[907]
 
 directors, severance pay was not mentioned. The discussion focused on salary and vacation and sick pay. There was also evidence that the City did not provide severance pay, and that CWAPA’s personnel policy specified that severance pay would be calculated on the basis of an employe’s years of service "with the employer.”
 

 We conclude that there was substantial evidence to support the trial court’s decision that plaintiff was entitled to four weeks’ severance pay for his four years of service with CWAPA.
 
 [2]
 

 Plaintiffs second assignment of error challenges the trial court’s finding that the participating public bodies were not liable for plaintiff’s severance pay.
 

 In support of his position plaintiff points to ORS 468.560(2) which permits dissolution of an air pollution authority and disposition of its assets after payment of all debts. While admitting that CWAPA has not been formally dissolved, plaintiff argues that the participating public bodies should be liable for the debt to the plaintiff since they permitted the acquisition of CWAPA’s assets by the DEQ when the debt to plaintiff was still outstanding.
 
 [3]
 
 Plaintiff also contends that the defendants, upon the takeover of CWAPA, held the assets in trust for the authority’s creditors.
 

 Multnomah County contends that since CWAPA has not been dissolved, the plaintiff’s remedy is to follow the assets and sue the DEQ. The county
 
 *[908]
 
 analogizes this case to the situation where one public body merges with another, and the merging agency assumes the liabilities of the merged agency.
 

 Clackamas County argues that CWAPA properly disposed of its assets pursuant to ORS 468.515, and that if plaintiff has a remedy it is against the DEQ.
 

 The defendants contend that the question of the participating members’ liability for severance pay, penalty wages and attorney fees is a question of fact which would require us to merely ascertain whether the trial court’s conclusion was supported by substantial evidence. We disagree. The facts relating to the disposition of assets are undisputed. The sole question for this court is whether as a matter of law liability will be imposed in this fact situation.
 

 The record disclosed that the Environmental Quality Commission (EQC) ordered the DEQ to assume the functions of CWAPA on July 1, 1973. The EQC’s action was taken pursuant to ORS 468.565 which permits EQC’s takeover of the functions of a regional air pollution authority that has failed to establish an adequate air pollution program. The EQC directed the DEQ to implement the takeover and arrange for the transfer of CWAPA assets to DEQ. All of the defendants permitted the DEQ to assume control over CWA-PA assets, and Multnomah, Washington and Clackamas Counties formally assigned their interest in the fixed assets of CWAPA to the DEQ.
 

 The statutes governing air pollution authorities do not provide for the compulsory takeover of assets by the EQC when it assumes the functions of an active authority under the provisions of ORS 468.565. Any such disposition of assets would have to come from the voluntary acts of the authority or its participating members. The question in this case is whether upon cessation of authority functions the participating members may permit the acquisition of all authority assets prior to the payment of authority debts.
 

 
 *[909]
 
 Where an air pollution authority formally dissolves, the legislature has provided that creditors are to be paid prior to distribution of the assets. ORS 468.560(2). The obvious intent is to protect the authority’s creditors.
 

 The policy of protecting creditors is no less compelling in the present situation where no formal dissolution has occurred, but CWAPA has ceased functioning entirely, and its assets have been disposed of to the detriment of its creditors, including the plaintiff. The defendants seem to argue that since the legislature did not require the payment of debts in this situation, it did not intend that they be paid by CWAPA’s participating members. Defendants claim that the EQC should pay instead. We disagree. Since the EQC cannot compel the transfer of assets by CWAPA or its members, those members should be responsible for seeing that CWAPA’s debts are paid before it is rendered insolvent.
 

 The situation is comparable to the case where a corporation, while not actually dissolving, ceases functioning and disposes of its assets without paying its debts. Under the corporate trust doctrine, the assets are held in trust for creditors, and the directors who permit divestiture of the assets may be sued. Ballantyne on Corporations 732-33, § 318 (rev ed 1946).
 

 In the instant case the defendants permitted the disposition of all CWAPA assets when the authority was no longer a functioning entity. They were under a duty to see that all debts were paid prior to such distribution, and are liable to plaintiff for their failure to do so.
 

 Washington County contends that it terminated its involvement with CWAPA prior to the EQC takeover and should not be held liable for the claim of plaintiff.
 

 Plaintiff argues that since the statutes do not provide for unilateral withdrawal of a participating public body Washington County’s termination should be void and not bar recovery against it by plaintiff.
 

 
 *[910]
 
 The statutes governing air pollution authorities do not specify how an agency may withdraw from CWAPA. ORS 468.560(2) is the only provision dealing with voluntary termination of an authority, and it only covers total dissolution.
 

 Forming and joining an air pollution authority is voluntary, ORS 468.505, and we can perceive no reason to conclude that unilateral withdrawal may not be voluntary. However, we hold that voluntary withdrawal by a participating member does not preclude that member from being held at least partially liable for debts incurred while it was an active member of an authority.
 

 On cross-appeal CWAPA contends that the trial court erred in finding that CWAPA wilfully failed to pay plaintiffs severance pay when due. The plaintiff was terminated on June 30, 1973. Shortly thereafter he wrote to the CWAPA board of directors and informed them that his severance pay could be delayed since he was still hoping to find employment in government whereby he could transfer his benefits to another agency. CWAPA did not make payment. On February 6, 1974, plaintiff wrote to the most recent chairman of CWAPA requesting that four weeks’ severance pay be paid to him. When payment had not been received by July 5,1974, plaintiff wrote again to the chairman requesting that the severance pay be paid within 14 days. The money was never paid.
 

 The trial court found that the money was due on June 30,1973, and that CWAPA’s wilful failure to pay rendered it liable for 30 days’ penalty wages under ORS 652.150.
 
 [4]
 

 
 *[911]
 
 CWAPA contends that it should not be liable for the penalty because its action was not wilful for two reasons: (1) plaintiff waived immediate payment of the severance pay; and (2) CWAPA was financially unable to pay.
 

 As to CWAPA’s first contention, we see no reason why plaintiff’s initial waiver of immediate payment in July 1973 should also be a waiver of CWAPA’s duty to make immediate payment when plaintiff made his February 1974 demand for severance pay.
 

 CWAPA’s second argument has already been dealt with in part by our previous discussion as to the other defendants’ liability. We have held that the City, Multnomah County, Washington County, Clackamas County and Columbia County are liable for plaintiff’s severance pay claim because they permitted total disposition of the assets when a debt was still outstanding. Thus, CWAPA’s financial situation in February was the result of the codefendants’ actions.
 

 CWAPA argues that even without the total distribution of its assets to DEQ, the assets were inadequate to satisfy plaintiff’s claim for severance pay. The trial court apparently found the contrary to be true when it concluded that CWAPA had wilfully failed to pay. We have reviewed the audit of CWAPA’s accounts and records prepared for the DEQ and other exhibits in the record, and conclude that there was substantial evidence to support the trial court’s finding that CWAPA’s failure to pay was wilful, thus entitling plaintiff to penalty wages.
 

 The codefendants are liable for the penalty wages because, absent their consent to the distribution of assets, CWAPA would have had sufficient assets to meet plaintiff’s claim.
 

 Affirmed in part; reversed in part.
 

 [1]
 

 Washington County joined CWAPA on January 22, 1970, and withdrew on September 14, 1971.
 

 [2]
 

 Plaintiffs contention that he was "transferred” to CWAPA is not dispositive of the case. The question before the trial court was concerned with the terms of plaintiffs agreement with CWAPA rather than how the City of Portland treated his departure.
 

 [3]
 

 All parties agree that CWAPA, although not functioning, has not been dissolved as provided for by OES 468.560(2), which states:
 

 "Any regional authority may be dissolved by written consent of the governing bodies of all participating counties and cities. Upon dissolution, any assets remaining after payment of all debts shall be divided among the participating counties and cities in direct proportion to the total amount contributed by each. However, all rules, standards and orders of the regional authority shall continue in effect until superseded by action of the commission.”
 

 [4]
 

 ORS 652.150 provides:
 

 "If an employer wilfully fails to pay any wages or compensation of any employe who is discharged or who quits his employment, as provided in ORS 652.140, then, as a penalty for such nonpayment, the wages or compensation of such employe shall continue from the due date thereof at the same rate until paid or until action therefor is commenced; provided, that in no case shall such wages or compensation continue for more than 30 days; and provided further, the employer
 
 *[911]
 
 may avoid liability for the penalty by showing his financial inability to pay the wages or compensation at the time they accrued.”