Argued May 25, reversed August 17, 1977

# CLACKAMAS COUNTY, *Respondent,*
## *v.*
# DUNHAM et ux, *Appellants.*
## (No. 91323, CA 6817)

567 P2d 605

Mark P. O'Donnell, Portland, argued the cause for appellants. With him on the brief were John W. Shonkwiler and O'Donnell, Rhoades & Gerber, Portland.

Scott H. Parker, Clackamas County Counsel, Oregon City, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Lee and Johnson, Judges.

JOHNSON, J.

## JOHNSON, J.

Defendants appeal the trial court decree declaring their mobile home a public nuisance and enjoining its use as a residence on defendants' property. On October 1, 1972, defendants erected a "double wide" mobile home on their property which is designated as RR (Recreational Residential) by Clackamas County. The county zoning ordinance provides:

"* * * * *

"22.3 Permitted Uses:

"In a recreational residential district, the following uses are allowed as hereinafter provided:

"A. Principal uses

"1. One single-family dwelling unit per lot or parcel of land.

"B. Conditional uses

"1. The following uses may be allowed as a conditional use subject to Section 8 and Section 12.4, procedure for public hearing, of this Ordinance:

c. Mobile home parks, with an allowable maximum density of four (4) mobile homes per acre;

"* * * * *"

Defendants do not have a conditional use permit. Section 3.2 of the ordinance sets forth the pertinent definitions:

"* * * * *

"Dwelling. A building designed for residential occupancy, but not a house trailer. * * *

"Dwelling, Single-Family. A detached building containing one kitchen, designed for and occupied exclusively by one family and the household employees of that family, but not a trailer house. * * *

"* * * * *

"Trailer Houses. Building designed in such a manner that it may be moved from one location to another."

The structure in question has 1,500 square feet and

is 65 × 24 feet. It was constructed and transported in two separate units which were subsequently anchored to a preconstructed foundation and bolted together. The house contains a kitchen, living room, dining room, family room, utility room and three bedrooms. The tongue, axles, wheels and springs were removed when the house was erected. The foundation has subsequently been skirted, a front porch added together with a back patio. The surrounding property has been landscaped, fenced, and a circular driveway installed. The structure has the appearances of a conventionally constructed home. The county contends the structure is a "trailer house" and thus a nonpermitted use.

In *Clackamas County v. Ague,* 27 Or App 515, 556 P2d 1386 (1976), Sup Ct *review denied* (1977), we held that the subject ordinance was constitutional in that a county could make a reasonable classification between conventionally constructed homes and mobile homes, stating:

> "Defendants' most recognizable constitutional argument is an equal protection claim: that it is unconstitutional to distinguish between conventionally constructed homes and mobile homes. Such a distinction may, as most of defendants' argument attempts to show, be unwise. But the equal protection inquiry is only for minimum rationality. The distinction is minimally rational for several reasons; to cite only one, it is widely believed by realtors, tax appraisers, etc. that conventionally constructed homes tend to appreciate in value while mobile homes tend to depreciate in value. This is sufficient to enable zoning ordinances to distinguish between the two forms of housing. [Citing case.]" 27 Or App at 518

A pertinent constitutional question, which was not raised in either *Ague* or here and which we do not reach, is whether the ordinance definition of "trailer house" is sufficiently certain for purposes of determin-

ing a non-permitted use.[1] The question points up the underlying problem in applying a vague statute in this injunction proceeding.[2] Conceivably, any building "may be moved from one location to another." The ordinance presumably refers to structures that are readily movable, but there is no standard provided either to those charged with the enforcement or for the courts for making such determination. *See Lane County v. Heintz Const. Co.,* 228 Or 152, 364 P2d 627 (1961).

■  The additional descriptive phrase in the definition "designed in such manner" adds little to our enlighten-

[1] With all due respect for the dissenting opinion of Chief Judge Schwab, there is no implication that we would hold the ordinance definition to be unconstitutionally vague. We mention this possible constitutional issue because the case illustrates the difficulty posed by attempting to apply the vague statutory language to concrete facts. The difficulty is compounded by changing technology. In the past the terms "trailer house" or "mobile home" were commonly understood to refer to a type of vehicular equipment. However, because of changing technology the term "mobile home" appears to encompass more than just vehicular equipment. Mobile home construction apparently has become a method of prefabricating and transporting components for residential structures of a stationary nature. The Clackamas County Ordinance may prohibit the latter type of structure if there is proof that the in-place structure is still movable. However, irrespective of any constitutional question presented, there are more precise definitions available such as those quoted in footnote 2 which prohibit this type of structure.

[2] In *Columbia County v. Kelly,* 25 Or App 1, 548 P2d 163, Sup Ct *review denied* (1976), we upheld a zoning ordinance which differentiated between mobile and conventional homes. Significantly, the ordinance at issue there, unlike the Clackamas County ordinance, applied not only a portability test in defining a mobile home, but also looked to other physical characteristics. The ordinance defined mobile home to be:

" 'Any vehicle or similar portable structure having no foundation other than wheels, jacks or skirtings and so designed or constructed as to permit occupancy for living or sleeping purposes.' " 25 Or App at 5

2 R. Anderson, American Law of Zoning 2d, § 14.03, points to an even more explicit ordinance of Charlotte, North Carolina, which defines a mobile home as follows:

" 'A movable or portable dwelling over thirty-two (32) feet in length and over eight (8) feet wide, constructed to be transported on its own chassis and designed without a permanent foundation, whether or not a permanent foundation is subsequently provided, which includes one or more components that can be retracted for transporting purposes and subsequently expanded for additional capacity, or two (2) or more units separately transportable but designed to be joined into integral unit, as well as a portable dwelling composed of a single unit.' "

ment. The term "design" infers that the structure is constructed with a conscious intent that it may be moved in the future. The requisite design feature must be interpreted to be prospective and not to refer to initial construction. Otherwise the ordinance would be a prohibition on all buildings. Any structure is movable in its initial construction. Materials must be delivered to the site. Even a conventionally constructed home entails some components, such as cabinets, that are prefabricated and assembled before delivery to the site. The modern prefabricated or modular house involves even fewer components that are readily movable to the site. The county's only witness, a planner, testified that in his opinion the ordinance does not prohibit prefabricated modular homes. The definition is not concerned with the portability of materials or components to the construction site, but whether the design of the "building," completed and in place, contains features that make it movable from one location to another.

Defendant contends that the county has not proved that defendants' home was a trailer house as defined in the ordinance. The sole witness for the county was a planner who investigated zoning violations and investigated the alleged violation at issue here. He stated that the only basis for determining whether defendants' home was a trailer house was his visual inspection and "the state insignia" affixed to the building. Presumably the state insignia reference is that which may be required under ORS 446.170.[3] Such insignia merely indicates compliance by the manufacturer with certain state requirements "to protect [against] * * *

_____
[3]ORS 446.170 provides:

"(1) Trailers and recreational vehicles subject to the provisions of ORS 446.155 to 446.200, and trailers and recreational vehicles upon which alterations of installations of plumbing, heating, illuminating, cooking or electrical equipment are made shall have affixed thereto an insigne of compliance.

"(2) No person shall place an insigne of compliance on a trailer or recreational vehicle except as provided by ORS 446.155 to 446.200 and the rules and regulations promulgated thereunder."

substandard and unsafe plumbing, heating, illuminating, cooking and electrical equipment and installations." ORS 446.185(2). The insignia is not evidence of whether the structure may be moved from one location to another.

The county's witness conceded upon cross examination that there was nothing from his visual examination from which he could distinguish between defendants' home and conventionally constructed homes as to movability or otherwise. The defendant testified to the construction of the foundation, the bolting together of the two units and anchoring the units to the foundation, removal of the tongue, axles, wheels and springs, the skirting of the foundation and construction of the adjoining porch, patio and fences. The county made no effort to rebut any of this evidence or to show that these steps had not rendered the structure immovable.

■■ The county attempts to rely on defendant's admission that the structure is characterized as a "mobile home" and that the terms "mobile home" and "trailer house" are used interchangeably in the Clackamas County ordinance. In *Clackamas County v. Ague, supra,* 27 Or App at 515, we acknowledged the interchangeability of these terms in the ordinance. The defect in the county's argument is that the ordinance does not define "mobile home" and thus the definition of "trailer house" is applicable. The fact that defendants' home is called a "mobile home" and that it was originally transported on wheels in two units does not make it a trailer house. The issue is not how the building arrived on the site, but whether *in place* it retained design features that made it readily movable from its location. The record is devoid of any evidence of movability. Plaintiff has failed to prove that defendants' home is a trailer house.

In *Clackamas County v. Ague, supra,* the appellant also argued that his mobile home would not constitute a trailer house. Our opinion in that case did not deal with that issue, but merely upheld the statute as to the

[ 601 ]

constitutionality of the classification. The facts in that case are different in that there the mobile home was a single unit stored on the property with its wheels intact. In *Yates v. Schumacher,* 29 Or App 449, 563 P2d 771 (1977), we affirmed, Per Curiam citing *Ague,* an injunction abating a mobile home as a nuisance under the Clackamas County ordinance. The mobile home at issue there was practically identical to defendants'. The only distinction is that in *Yates* the county instituted proceedings before the construction was completed. It is doubtful that the factual differences in either *Yates* or *Ague* were of substantive significance. Appellants in both cases made the same assignments of error as made here. However in both those cases, as here, appellant relied primarily on arguments relating to the constitutionality of the classification. In any event we did not address in our opinions in *Ague* or *Yates* the assignments of error relating to the county's failure of proof that the mobile homes in question were trailer houses and to that extent we were in error.

Reversed.

**LEE, J.,** concurring.

I concur because the county failed to prove that defendant's "mobile home" is a "trailer house." We erred in *Clackamas County v. Ague,* 27 Or App 515, 556 P2d 1386 (1976), Sup Ct *review denied* (1977), when we equated "mobile home" with "trailer house"— to that extent *Ague* and its progeny should be modified. Technological evolution requires an appropriate definition of "mobile home." I agree with the dissent that the issue of vagueness should not be raised.

**SCHWAB, C. J.,** dissenting.

We have had a series of cases, all from Clackamas County, in which the same attorney, apparently in part representing a mobile home trade association, has

repeatedly presented "Brandeis briefs" about the wisdom and desirability of allowing mobile homes. Were I a state or local legislator, I would find many of these arguments cogent. However, until today these arguments were not deemed judicially cognizable by a single judge. Today the perseverance of repeatedly praising the virtues of mobile homes produces a majority opinion holding that mobile homes are an outright permitted use in all single family residential zones in Clackamas County.

I disagree with this conclusion, and specifically disagree with the majority on three points: (I) the constitutionality of the zoning ordinance; (II) the interpretation of the ordinance; and (III) the application of the ordinance in this case.

## I

The majority implies that the definition of mobile home in the Clackamas County Zoning Ordinance— "Building designed in such a manner that it may be moved from one location to another"—might be void for vagueness. As the majority notes, that issue "was not raised" by the parties in the trial court or this court. 30 Or App at 598. The majority next claims "we do not reach" the vagueness issue. 30 Or App at 598. But the majority then enters into a discussion of the issue, the thrust of which is that, had it only been raised, the definition of "trailer house" in the Clackamas County Zoning Ordinance would be held unconstitutionally vague.[1]

This suggestion is fraught with potential for wreaking havoc with Oregon land-use law which, appropri-

[1] After referring in text to vagueness being a "pertinent constitutional question" and complaining that the ordinance provides "no standard," 30 Or App at 598-99, in a footnote the majority claims only the intent to point out "there are more precise definitions available." 30 Or App at 599, n 1. If the majority's textual comments do not at least imply that the zoning ordinance is unconstitutionally vague, then with all due respect, I do not think it is any of our business to make gratuitous comments on the relative precision of statutory definitions.

ately I submit, is filled with elastic terms. What is "public convenience" and "traffic congestion"? *See Jehovah's Witnesses v. Mullen et al,* 214 Or 281, 330 P2d 5, 74 ALR2d 347 (1958), *appeal dismissed and cert den* 359 US 436 (1959). What is a "detached accessory structure"? *See, Yunker v. Means,* 271 Or 56, 530 P2d 846 (1975). What is a "commercial amusement establishment"? *See, Clatsop County v. Morgan,* 19 Or App 173, 526 P2d 1393 (1974). What are areas of "predominantly" Class I to IV soils that generally cannot be lots smaller in size than "appropriate for the continuation of the existing commercial agricultural enterprise within the area"? Land Conservation and Development Commission, Oregon Administrative Rule 660-10-060, Appendix A, p 13, Goal 3—Agricultural Lands. My point is that Oregon land-use law contains many terms at least as ambiguous as the Clackamas County definition of a mobile home. The majority's vagueness discussion casts doubt, to say the least, on the validity of a large body of law.[2]

Since the majority has spontaneously raised the vagueness problem, I feel it necessary to respond. The vagueness doctrine was discussed in *Palen v. State Bd. Higher Education,* 18 Or App 442, 446-47, 525 P2d 1047, Sup Ct *review denied* (1974):

> " 'The root of the vagueness doctrine is a rough idea of fairness.' *Colten v. Kentucky,* 407 US 104, 110, 92 S Ct 1953, 32 L Ed 2d 584 (1972). The ultimate criterion being fairness, the degree of precision required in statutes and regulations varies somewhat depending upon the context. At one end of the spectrum—where the greatest

---

[2]The majority cites certain provisions from ORS ch 446, which contains extensive state statutes on the subject of mobile homes. The statutory definition of the subject to which these statutes apply reads:

" 'Mobile home' means a vehicle or structure constructed for movement on the public highways, that has sleeping, cooking and plumbing facilities, is intended for human occupancy and is being used for residential purposes." ORS 446.003(19).

If the majority has doubts about the constitutionality of the Clackamas County definition, i.e., designed to be moved, I presume these same doubts would apply to ORS ch 446 which is built on the foundation of substantially the same definition, i.e., constructed for movement.

degree of precision is required—are statutes defining crimes. *See, State v. Hodges,* 254 Or 21, 457 P2d 491 (1969); *City of Portland v. White,* 9 Or App 239, 495 P2d 778, Sup Ct *review denied* (1972). Toward the other end of the spectrum are, for example, statutes defining the relationship between a governmental employer and its employes—statutes that typically articulate a common standard applicable to myriad different employes performing widely disparate tasks.

"Thus, the United States Supreme Court has upheld broadly worded statutory standards in the context of public employment. *Arnett v. Kennedy,* 416 US 134, 94 S Ct 1633, 40 L Ed 2d 15 (1974), and *CSC v. Letter Carriers,* 413 US 548, 93 S Ct 2880, 37 L Ed 2d 796 (1973), are the leading examples. In *Arnett* the court upheld 5 USC § 7501 which provides that federal civil service employes could be discharged 'only for such cause as will promote the efficiency of the service.' In *Letter Carriers* the court upheld the Hatch Act prohibition against certain federal employes taking 'an active part in political management or in political campaigns.' 5 USC § 7324(a)(2). *See also, Broadrick v. Oklahoma,* 413 US 601, 93 S Ct 2908, 37 L Ed 2d 830 (1973)."

Where on the continuum between required precision and permitted imprecision do land-use regulations fall? I would hold that in some instances the nature of the subject requires at least as much permitted imprecision as in the public employer-employe context involved in *Palen.*

The uses to which land can be put are only limited by the seemingly infinite ingenuity of man, ranging from a wilderness preserve to a strip mine. Governmental efforts to control land use can only be as specific as the subject matter permits.[3] An example is the previously cited LCDC Agricultural Lands Goal—an attempt to define, in a few manageably brief paragraphs, the millions of acres in the State of

---

[3]Some land-use controls, such as height limitation, can be stated with mathematical precision. Other issues, such as the siting of a nuclear power plant, simply cannot be determined based on precise standards of general applicability. *See Marbet v. Portland Gen. Elect.,* 277 Or 447, 460-63, 561 P2d 154 (1977).

Oregon where the principal permitted use must be agricultural. I refuse to join the majority's implication that the Agricultural Lands Goal and much of Oregon land-use law is unconstitutionally vague.

## II

In the constitutional discussion, the majority complains "there is no standard provided * * * to * * * the courts for making" the determination of what is a mobile home. 30 Or App at 599. Yet the majority apparently has no difficulty in deciding what we have here is not. The majority is in fact actually supplying the standard through an interpretation of the definition of mobile home in the Clackamas County Zoning Ordinance.

In my dissent in *Columbia County v. Kelly,* 25 Or App 1, 548 P2d 163, Sup Ct *review denied* (1976), I stated that local governments are free to define mobile home in such a way that "once a mobile home, always a mobile home." 25 Or App at 8. Whether the zoning ordinance involved in that case had done so was the question that divided the court.

Again that issue splits us. As I read it, the Clackamas County definition—"Building designed in such a manner that it may be moved from one location to another"—does mean "once a mobile home, always a mobile home." The definition only requires determination of whether a building, at the moment construction was completed, was designed so as to be readily portable—always assuming, of course, that it has not been so substantially altered as to lose its original identity.

It is not clear to me whether the majority intends to hold that local governments are powerless to provide "once a mobile home, always a mobile home." It is clear to me that the majority intends to hold that the Clackamas County Zoning Ordinance does not do so. This partial clarity emerges from the majority's repeated emphasis that the question is whether defend-

ants' abode is a mobile home "in place." 30 Or App at 600, 601.

The majority reasons the completed-and-in-place test "must" be adopted because all construction involves "components that are readily movable to the site." 30 Or App at 600. The fallacy here is that the Clackamas County definition focuses on whether a building is designed to be moved as a *unit;* the portability of the components that make up a building is irrelevant.

### III

Our divergent theories of the application of the zoning ordinance follow from our different interpretations. The majority apparently believes defendants' abode was a mobile home the day it was towed onto defendants' property, stating: "On October 1, 1972, defendants erected a 'double wide' mobile home on their property * * *." 30 Or App at 597. In the majority's view, this building ceased being a mobile home when the tongue, axles, wheels and springs were removed because it was no longer "designed to be moved" within the meaning of the ordinance.[4]

On the other hand, under my "once a mobile home, always a mobile home" interpretation of the ordinance, defendants' abode is now a mobile home. Its continued occupation and use is in violation of the zoning ordinance. I would affirm the trial court's injunction abating this illegal use.

### IV

In summary, the majority today makes a sweeping holding: that mobile homes, once the axles, wheels,

---

[4]The prevailing opinion and the concurring opinion repeatedly state the county failed to prove defendants' abode is a mobile home, suggesting that this case is being decided on a narrow factual basis. Actually, the majority's conclusion is based on a broad legal holding: that a building ceases being "designed to be moved" once the wheels, etc., are removed. Under this legal standard, it is impossible for the county to present any evidence that would establish that a mobile home sans wheels remains a mobile home.

etc., are removed, are an outright permitted use in all Clackamas County single family residential zones. This follows from the majority's implicit conclusion that if defendants' abode is not a prohibited mobile home it must be a permitted single family dwelling. This holding will undoubtedly come as a surprise to defendants' neighbors who watched defendants' abode towed onto the subject property. In common sense and common usage, defendants' neighbors would have regarded the thing they saw towed into the neighborhood as a mobile home. But, according to the majority, it ceased to be a mobile home once the wheels were removed. "It is a scheme which would fool only a lawyer." *Martin v. Oregon Building Authority,* 276 Or 135, 145, 554 P2d 126 (1976).

I respectfully dissent.