Argued March 6, reversed May 23, rehearing denied June 21, 1978

CLACKAMAS COUNTY, *Petitioner,*
*v.*
DUNHAM et ux, *Respondents.*
(TC 91323, CA 6817, SC 25644)
579 P2d 223

Scott H. Parker, Clackamas County Counsel, Oregon City, argued the cause and filed a brief for petitioner.

Mark P. O'Donnell, of O'Donnell, Rhoades & Gerber, Portland, argued the cause for respondents.

LENT, J.

Howell, J., dissenting opinion.

Linde, J., dissenting opinion.

**LENT, J.**

This case involves the construction and application only of a Clackamas County Zoning Ordinance (Ordinance) as it pertains to defendants' mobile home. In 1975, Clackamas County filed suit to enjoin defendants' use of their mobile home as a residence and to abate such use as a public nuisance pursuant to ORS 215.180 (1975) and 215.185 (1975).[1] The trial court found that defendants' use of their mobile home as a residence violated the Ordinance, declared it a public nuisance and ordered it enjoined and permanently abated. The defendants appealed to the Court of Appeals, which, by a divided court, reversed, *Clackamas County v. Dunham et ux,* 30 Or App 595, 567 P2d 605 (1977), and held that defendants' mobile home was an outright permitted use under the Ordinance. We allowed review to address an apparent inconsistency between this result and that reached in *Clackamas County v. Ague,* 27 Or App 515, 556 P2d 1386, S Ct *rev den* (1976).

The essential facts are undisputed. Prior to October

---

[1]ORS 215.180 (1975), (which was repealed by 1977 Or Laws ch 766 § 16), provided:

"The location, erection, construction, maintenance, repair, alteration or use of a building or other structure, or the subdivision, other partitioning, or use of land, in violation of an ordinance or regulation authorized by ORS 215.010 to 215.190 and 215.402 to 215.422 shall be deemed a nuisance."

ORS 215.185 (1975), (which was amended by 1977 Or Laws ch 766 § 6), provided:

"In case a building or other structure is, or is proposed to be, located, constructed, maintained, repaired, altered, or used, or any land is, or is proposed to be, used, in violation of an ordinance or regulation authorized by ORS 215.010 to 215.190 and 215.402 to 215.422, the governing body or district attorney of the county or a person whose interest in real property in the county is or may be affected by the violation, may, in addition to other remedies provided by law, institute injunction, mandamus, abatement, or other appropriate proceedings to prevent, temporarily or permanently enjoin, abate, or remove the unlawful location, construction, maintenance, repair, alteration, or use. When a temporary restraining order is granted in a suit instituted by a person who is not exempt from furnishing bonds or undertakings under ORS 22.010, the person shall furnish undertaking as provided in ORS 32.010 to 32.060."

1, 1972, defendants owned a 8-acre parcel in eastern Clackamas County, which bore the zoning designation of "RR" (Recreational Residential). This designation allowed a "single family dwelling" as the only outright permitted use.[2] The Ordinance, passed in 1960, defines "single family dwelling" as:

> "A detached building containing one kitchen, designed for and occupied exclusively by one family and the household employes of that family, but not a *trailer house.*" (emphasis added) Clackamas County Zoning Ordinance, § 3.2.

A "trailer house," in turn, is defined by the Ordinance as a:

> "* * * building designed in such a manner that it may be moved from one location to another." (§ 3.2)

Finally, a "building" is defined as:

> "* * * any structure built for the support, shelter, or enclosure of any person, animals, chattels or property of any kind." (§ 3.2)

On October 1, 1972, the defendants installed the structure which is the subject of this suit on their land. The structure, which is known as a "double wide mobile home," consists of two units which are bolted together and measures 68 feet by 24 feet (approximately 1500 square feet of usable living space). Each unit was manufactured with a chassis which included

---

[2]Clackamas County Zoning Ordinance, § 22.3, provides, in pertinent part:

> "22.3 Permitted Uses:
> > "In a recreational residential district, the following uses are allowed as hereinafter provided:
> "A. Principal uses
> > "1. One single-family dwelling unit per lot or parcel of land.
> "B. Conditional uses
> > "1. The following uses may be allowed as a conditional use subject to Section 8 and Section 12.4, procedure for public hearing, of this Ordinance:
> > "* * * * *
> > "c. Mobile home parks, with an allowable maximum density of four (4) mobile homes per acre; * * *"

a tongue with springs and three axles attached. Two wheels were attached to each axle. Each unit was delivered independently to the defendants' property behind a diesel tractor. The defendants had poured a concrete foundation prior to the delivery of the two units. When the units arrived, the defendants removed the tongue, axles, wheels and springs with a cutting torch and had the units placed side by side on the foundation. The units were then bolted together and anchored down. The structure contains a kitchen, living room, dining area, family room, utility room, three bedrooms and two bathrooms. It has self-contained heating, plumbing and electrical systems.

Defendants immediately began to reside in the structure and, with their children, have been its only occupants. The structure was skirted, and a front porch and backyard patio were added. Defendants' property was landscaped and fenced. A circular un-paved driveway leads from a two-lane highway to the defendants' structure.[3]

In September 1973, plaintiff's agents investigated the structure in question, identified it as a "trailer house" under the Ordinance, and informed defendants that they were in violation thereof. In April 1975, plaintiff filed a complaint seeking an injunction against defendants' further use of their mobile home as a residence in violation of the Ordinance and a permanent abatement of the public nuisance which defendants' use allegedly constituted. Defendants denied the violation and interposed various affirmative defenses, including allegations that their house was a single-family dwelling and thus an outright permitted use, that the Ordinance was void for vagueness, that the Ordinance was void as applied as violating ORS

---

[3] The majority opinion below states, "The structure has the appearances of a conventionally constructed home." 30 Or App at 598. After viewing the photograph-exhibits, we must disagree with this characterization. The point, however, is not important to our disposition of this case.

215.055 (1975),[4] that the Ordinance was unconstitutional as applied as creating an impermissible classification in violation of the Fourteenth Amendment of the U.S. Constitution and Art I, § 20, of the Oregon Constitution, and that the Ordinance as applied violated the policy provisions of the Clackamas County Comprehensive Plan.

The trial court issued a decree permanently abating defendants' use of the structure as a residence as a public nuisance and enjoining such use. Defendants appealed to the Court of Appeals, assigning as error (1) the trial court's failure to invalidate the application of the Ordinance to the present case as a violation of ORS 215.055 and the policies set out in the Clackamas County Comprehensive Plan; (2) the trial court's failure to deny plaintiff's requested injunction based on plaintiff's "unclean hands"; (3) the trial court's failure to find the Ordinance inapplicable to defendants' particular "mobile home"; and (4) the trial court's failure to find the Ordinance unconstitutional as applied to the defendants as a denial of equal protection.

The Court of Appeals reversed, holding that the defendants' structure was not a "trailer house" under

---

[4]ORS 215.055(1) (1975) provides:

"Any comprehensive plan and all zoning, subdivision or other ordinances and regulations authorized by ORS 215.010 to 215.233 and 215.402 to 215.422 and adopted prior to the expiration of one year following the date of the approval of state-wide planning goals and guidelines under ORS 197.240 shall be designed to promote the public health, safety and general welfare and shall be based on the following considerations, among others: The various characteristics of the various areas in the county, the suitability of the areas for particular land uses and improvements, the land uses and improvements in the areas, trends in land improvement, density of development, property values, the needs of economic enterprises in the future development of the areas, needed access to particular sites in the areas, natural resources, including incident solar energy and utilization, of the county and prospective needs for development and utilization thereof, and the public need for healthful, safe, aesthetic surroundings and conditions."

[ 424 ]

the definition in the Ordinance, that it was a single-family dwelling and thus an outright permitted use.[5]

In his dissent, Chief Judge Schwab, decrying the result of the majority's holding—"that mobile homes, once the axles, wheels, etc., are removed, are an outright permitted use in all Clackamas County single-family residential zones"—30 Or App at 608, opines that the definition of "trailer house" in the Ordinance accomplishes what Columbia County had failed to accomplish in *Columbia County v. Kelly,* 25 Or App 1, 548 P2d 163, S Ct *rev den* (1976) (dissenting opinion of Chief Judge Schwab): to embody the principle "once a mobile home [or trailer house], always a mobile home." Plaintiff's petition for review seeks reversal of the Court of Appeals' determination that the defendants' structure was not a "trailer house" as defined by the Ordinance. We reverse and reinstate the trial court decree.

The tenor of the majority opinion below indicates that the decree was being reversed for plaintiff's failure to prove that the structure in question was movable as it sat on its foundation and therefore a "trailer house" under the ordinance definition. We conceive of this case, not as one involving an assessment of the evidence as such, but as one involving the construction of the pertinent sections of the Ordinance and their application to the basically undisputed facts.

We repeat here the definition of "trailer house" given in the Ordinance:

"* * * building designed in such a manner that it may be moved from one location to another."

Does "designed" refer to design for the manufacture of the building or design for the installation of the building?

---

[5] The opinion of the court pointedly discusses the vagueness issue but does not resolve it. Judge Lee, in a brief concurring opinion, rejects this discussion, as does the dissent. As the *majority* below indicated, the issue was not properly before the Court of Appeals.

The Court of Appeals chose the latter; i.e., if portability is destroyed by the manner of installation, the "building" is no longer a "trailer house." This would have the effect of allowing the owner of the smallest highway travel trailer containing a kitchen to avoid the proscription of the ordinance by simply affixing the trailer to his RR land in such manner as permanently to destroy its portability. We cannot believe that the framers of the ordinance intended that absurdity.

■■ We choose the former; i.e., we find it more logical that "designed" refers to design for the manufacture of the building. It is true that this probably means that, as it leaves the manufacturer, a "building" which is a mobile home is forever a mobile home.[6] If the authors of the ordinance intended otherwise, it would have been easy so to say. We hold, therefore that a building is a trailer house within the meaning of this ordinance if the building is designed to be manufactured in such a manner that it may be moved from one location to another. Such a structure, being expressly excluded from the definition of a single-family dwelling, is not an outright permitted use in the RR zone.[7]

---

[6]The majority below implies that such a construction of the ordinance would necessarily include within its ambit all component parts of conventionally constructed homes. That ignores the word "building" in the definition of "trailer house." A truckload of lumber or bricks cannot meet the definition of "building" contained in the ordinance.

[7]It can be logically argued that even if "designed" refers to installation, by defendants' own proof, their mobile home was portable. Its installation, in defendants' own words, consisted of the following:

"The unit was slid into place and bolted together and anchored down."

Presumably, it could be moved from its present location to another by reversing the above process; i.e., removing the anchors, unbolting the units and sliding them out to be moved to another location. On the portability continuum, with a highway travel trailer on one end and a conventionally constructed house on the other, it is clearly closer to the portability end of the continuum.

The Court of Appeals decision is reversed, and the trial court decree reinstated.[8]

---

[8] As indicated previously, defendants cited four assignments of error before the Court of Appeals. The Court of Appeals reversal obviated consideration of these assignments. We have considered each of them carefully and have concluded that none requires either a reversal of the trial court decree or extensive discussion here.

Defendants claim that the Ordinance should not be enforced against them as it is inconsistent with the mandates of state law, ORS 215.055(1), *see* n. 5, *supra,* requiring it to "promote the public health, safety and general welfare," such welfare including the encouragement of low cost housing. However, the same statute also requires consideration of "property values" and "the public need for healthful, safe, *aesthetic* surroundings and conditions." The choice of how to balance these potentially conflicting considerations is a legislative one and cannot prevent enforcement of the Ordinance in this particular case.

Defendants also claim that the enforcement of the Ordinance against them is inconsistent with the Clackamas County Comprehensive Plan, which states as a general policy that "[m]obile and modular homes should be encouraged *where appropriate,* as a means of fulfilling limited income housing needs." (emphasis added) The italicized language again indicates legislative discretion about where the encouragement of mobile homes is or is not appropriate. It is not for the courts to disturb the exercise of this legislative judgment in a case such as this one.

Defendants claim plaintiff was guilty of "unclean hands." This appears to be merely a repeat of the argument discussed above.

Defendants claim the Ordinance is inapplicable to defendants' structure, since such a structure (double wide mobile home) was unknown at the time the Ordinance was drafted in 1960. The fact that defendants' structure was wider and longer than those which existed in 1960 does not mean that it does not fall within the definition set out at the earlier date. As demonstrated in the text of this opinion, it does fall within the cited definition. The result of defendants' argument would be to leave such structures totally unregulated, a result so unreasonable as to compel its rejection.

Finally, defendants claim that the enforcement of the Ordinance against them constitutes an impermissible classification of mobile homes as distinct from conventionally constructed homes, thus denying them the equal protection of the laws. That classification, as such, however, is not subject to the protection of the equal protection clauses of the Oregon (Art I § 20) or the United States (14th Amendment) Constitutions, since it involves the classification of things, not persons. Defendants, however, claim that the underlying classification is one based on wealth, since mobile homes provide housing primarily for low-income persons. Even assuming the efficacy of the latter classification, it passes the equal protection tests both under the Oregon Constitution, *Olsen v. State ex rel Johnson,* 276 Or 9, 20, 554 P2d 139 (1976), and under the United States Constitution, *San Antonio School District v. Rodriguez,* 411 US 1, 40-44, *reh den* 411 US 959 (1973).

**HOWELL, J.,** dissenting.

I dissent. The majority opinion misconstrues a Clackamas County ordinance, giving it a meaning that potentially violates the Clackamas County Comprehensive Plan and the goals of the state's Land Conservation and Development Commission.

The issue before this court is whether defendants William and Mary Dunham violated a Clackamas County zoning ordinance when they put their new 1,500 square foot mobile home on their property. The ordinance provides, in part, as follows:

"Permitted Uses:

"In a Recreational Residential District, the following uses are allowed as hereinafter provided:

"A. Principal Uses

"1. One single-family dwelling unit per lot or parcel of land." (§ 22.3)

"Single-family dwelling" is defined in the ordinance as:

"A detached building containing one kitchen, designed for and occupied exclusively by one family and the household employees of that family, but not a trailer house." (§ 3.2)

"Trailer house" is defined as:

"* * * a building designed in such a manner that it may be moved from one location to another." (§ 3.2)

Thus, the specific issue is whether modern mobile homes are "trailer houses" within the meaning of the Clackamas County ordinance.[1] Stated another way, are modern mobile homes designed in such a manner that they may be moved from one location to another?

It is conceded that a mobile home is built to be moved from the place of manufacture to its initial homesite. But I do not believe that the ordinance was

---

[1]The decision of the majority that the mobile home in this case constitutes a proscribed trailer house under the 1960 Clackamas County ordinance should have no bearing on some other municipal ordinance relating to mobile homes, trailer houses, or modular homes.

[ 428 ]

intended to cover that initial movement. The words "designed in such a manner that it may be moved from one location to another" connotes a design that foresees continual movement. In other words, the ordinance proscribes buildings that are designed to be moved on the lot and off again.

Generally, modern mobile homes are designed to be moved once—from the dealer to the homesite. If the manufacturer's initial design is controlling, then the size of this mobile home, over 1,500 square feet of usable floor space, and the cost and difficulty of moving it is evidence that the manufacturer's design was that it not be moved after it was initially placed. If, on the other hand, we must look to the installer's design, then the mobile home's attachment to a foundation, the detachment of the wheels, axles and tongue, and the addition of a driveway, skirt and patio all point to a design on the part of the purchaser to fix the mobile home to that piece of property so that it would not be moved again. Surely, if the installer had any intent to move the mobile home again, he would not have removed the wheels, axles, springs and tongue with a cutting torch and placed the home on a foundation.

In addition to the language of the ordinance itself, the history of trailer houses and mobile homes argues for a different result in this case. The ordinance was passed in 1960, a time when the state of the art in the mobile home industry was such that the phrase "trailer houses" had a meaning unrelated to the reality of modern mobile homes.

> "The early house trailers were not mobile homes, and not regarded or intended by their occupants as permanent dwellings. They were small recreational vehicles, usually 10 or 12 feet long, simple in design and manufacture, light, easily transportable, practical, useful, and economical." Hodes and Roberson, *The Law of Mobile Homes* 1, Ch. 1.1 (3d ed 1974).

One major reason for excluding trailer houses from residential areas was the transient nature of trailer dwellers:

"The development of mobile homes as a generally acceptable form of housing has come about so recently that the stereotyped picture of the 'trailer dweller' still raises the hackles of many tradition bound community planners." Shepard's *Mobile Homes and Mobile Home Parks* 3 (1975).

When the ordinance was enacted, trailer houses were vehicles whose mobility was determined by one's desire to go. Today, mobile homes are an alternative type of economical housing. The "mobility" of modern mobile homes is more myth than reality.

"The mobile home dweller is not inclined to move his home unless required to do so. * * * Most of the occupants of mobile homes prefer to remain for long periods in a park or neighborhood which they have grown to like. * * *

"Mobility, in fact, has become important only in moving the home from factory to dealer's sales center, and from there to homesite. A 20-foot-wide mobile home comprising two sections requires two licenses for highway movement, but only one for mobile home park registration." Hodes and Roberson, *supra* at 8. (Footnote omitted.)

Thus, given the language of the ordinance and the history of the development of mobile homes, it seems clear that the ordinance was designed to exclude structures that may be moved on and off the land like trailer houses. This mobile home does not fit that definition.

I cannot believe that a structure 68′ x 24′ with 1,500 square feet of living space containing a kitchen, living room, dining area, family room, utility room, three bedrooms and two bathrooms placed on a concrete foundation constitutes a trailer house within the meaning of the 1960 Clackamas County ordinance.[2]

I would affirm the Court of Appeals.

---

[2] I also conclude that my interpretation of the 1960 ordinance is consistent with the Clackamas County Comprehensive Plan and with the goals and guidelines of the state Land Conservation and Development Commission.

**LINDE, J.,** dissenting.

I join in Justice Howell's dissenting opinion that the structure in question here is not a "trailer house" within the meaning of the 1960 Clackamas County Ordinance. I only add a few sentences to stress the point made in the majority opinion as well as the dissent, that this decision states no general rule concerning mobile or modular homes but solely interprets that particular ordinance. Local governments may, within the limits of law, adopt and amend their ordinances to meet their objectives, and even the use of the same words does not necessarily carry the same interpretation in the ordinances of different cities or counties if there is reason to conclude that the words were meant in a different sense when they were adopted. Clackamas County in 1960 might have chosen to include structures such as the Dunhams' when they made "trailer houses" a conditional use, but for the reasons stated by Justice Howell, I do not believe it did so.