Argued and submitted January 11, reversed and remanded June 6, reconsideration
denied July 13, petition for review denied August 21, 1984 (297 Or 601)

## GENERAL ELECTRIC CREDIT CORPORATION,
*Appellant,*

*v.*

## NORDMARK et al,
*Respondents.*

(8623; CA A27837)

684 P2d 1

Rece Bly, Portland, argued the cause for appellant. With him on the briefs was James M. Westwood and Miller, Nash, Yerke, Wiener & Hager, Portland.

Carl G. Helm, La Grande, argued the cause for respondents. With him on the brief was Helm, Baum & Riedlinger, La Grande.

No appearance for respondent Timothy Carl Nordmark.

Before Richardson, Presiding Judge, and Warden and Rossman, Judges.

WARDEN, J.

## WARDEN, J.

Plaintiff appeals from the decree of the trial court dismissing its action for foreclosure of a security interest in a mobile home. We reverse and remand with instructions for entry of judgment for plaintiff.

In August, 1978, defendant Timothy Carl Nordmark (Nordmark) agreed to purchase from Mel Winter Mobile Homes, Inc. (Winter), a new double-wide 26' by 64' Fuqua mobile home. As part of that agreement, Nordmark granted Winter a security interest in the mobile home. The structure was delivered to Nordmark's property at Joseph in two sections on September 28, 1978. The two sections were set on concrete blocks and bolted together to form a single residence. Nordmark moved in and proceeded to add decking and an attached carport. On October 10, 1978, a Wallowa County deputy assessor appraised the property for inclusion on the Wallowa County tax roll.

On November 15, 1978, Nordmark and Winter entered into a new agreement which substantially changed the terms of payment in the prior agreement. The new agreement also expressly granted Winter a security interest in the mobile home and also provided that "[w]herever placed, the Vehicle shall remain personal property and shall not become a part of the freehold." On the same date, Winter assigned all its rights and interest in the mobile home, including its security interest, to plaintiff. Plaintiff secured from the Motor Vehicles Division a certificate of title on which its security interest was noted on December 1, 1978.

In the fall of 1979, defendants Hollis and Georgia Bridwell (Bridwells) agreed to purchase the real property upon which the mobile home was situated from Nordmark. They did not contact the Motor Vehicles Division to determine whether any security interest in the mobile home had been filed. On December 11, 1979, Nordmark conveyed the real property to the Bridwells by deed, and they recorded the deed in the Wallowa County Deed Records.

Nordmark defaulted on his contract with Winter, and on June 10, 1981, plaintiff obtained a judgment against Nordmark in the amount of $24,384.30, plus $3,000 in attorney fees. From a garnishment of Nordmark's assets,

plaintiff recovered $47.05. It then brought this action to foreclose its security interest in the mobile home. *See* ORS 79.5010(5). The trial court dismissed plaintiff's complaint, ruling that, because the mobile home had become a "fixture" at the time plaintiff's security interest was noted on the certificate of title, the title notation was insufficient to perfect its interest and that the Bridwells, as purchasers for value without notice of the encumbrance, took free of it. This appeal followed.

■ Plaintiff contends that the trial court erred in ruling that its interest was unsecured, arguing that a mobile home is subject to the filing provisions of ORS Chapter 481, that it fully complied with those provisions and that a fixture filing is neither necessary nor effective to perfect a security interest in a mobile home.[1] Bridwells contend that, although the structure may have been a "mobile home" when constructed, it became a fixture by virtue of being affixed to the real property before plaintiffs' security interest was noted on the certificate of title and that, therefore, it was no longer subject to the provisions of ORS Chapter 481. They argue that plaintiff could have perfected its security interest only by a fixture filing in the office where a mortgage on the real estate would be recorded. *See* ORS 79.3130(1)(b).

We begin our analysis with a determination of whether the structure is a "mobile home" within the meaning of ORS Chapter 481, or whether at some point it ceased to be a "mobile home" subject to that chapter. The applicable definition of "mobile home" was provided in ORS 481.021(3) (*amended by* Or Laws 1979, ch 767, § 1, and Or Laws 1983, ch 311, § 3):

"As used in this chapter and in the ad valorem tax laws of this state, except where the context otherwise requires:

"* * * * *

---

[1] Plaintiff also asserts that, because the November 15, 1978, contract between Winter and Nordmark, which it assumed, provided that the structure was to remain personal property wherever placed, it would have been impossible for it to record its security interest by a fixture filing under ORS 79.3130(1)(b). Because of our disposition of this case, we need not address that issue. We note in passing, however, that a written agreement that a chattel already annexed to the soil should be deemed personalty is binding only on the parties and those having actual notice. *Blehm v. Ringering,* 260 Or 46, 488 P2d 798 (1971); *Johnson v. Hicks,* 51 Or App 667, 626 P2d 938, *rev den* 291 Or 151 (1981).

"(3)   'Mobile home' (excluding a modular home, prefabricated home and tent trailer) means a trailer or structure that:

"(a)   Is designed to be transported or used upon the highways;

"(b)   Is capable of being used for human habitation or for business, commercial or office purposes; and

"(c)   Is not a travel trailer."

Paragraphs (b) and (c) are not at issue here; the language critical to our decision is "designed to be transported * * * upon the highways." That language has not been construed previously by this court, but the term "designed" has been discussed in the interpretation of a similarly phrased county zoning ordinance in *Clackamas County v. Dunham,* 282 Or 419, 579 P2d 223, *appeal dismissed* 439 US 948 (1978). The ordinance construed in that case defined "trailer house" as "a building *designed* in such a manner that it may be moved from one location to another." (Emphasis supplied.) The structure there was comparable to the structure here: it consisted of two units which, when bolted together measured 24' by 68', was installed on a concrete foundation and had a porch and backyard patio added. The court concluded that "designed" to be moved referred to design for the manufacture of the building, noting that a building that is a mobile home as it leaves the manufacturer probably "is forever a mobile home." 282 Or at 426.

Similarly, we conclude that "designed to be transported or used upon the highways" refers ·to the initial manufacturing design. It is undisputed that the structure here was designed to be moved on the highways at the time of its manufacture; it was, in fact, so moved at the time of its purchase by Nordmark. The structure at issue here was and remained a "mobile home" within the statute.[2]

We next turn to an examination of the statutes in effect at the time plaintiff's security interest was recorded in 1978.[3] At that time, *all* mobile homes in the state, on and after

---

[2] Defendants do not claim that the structure is a modular or prefabricated home.

[3] Under the present statutory scheme, effective October 15, 1983, the Motor Vehicle Division is required to adopt procedures whereby the owner of a mobile home who also has record title to the land on which the mobile home is located can obtain an exemption from the licensing and titling requirements of ORS ch 481. *See* ORS 481.518.

January 1, 1972, were required to be registered by the Motor Vehicles Division and issued a permanent identification plate. ORS 481.105(3) (*amended by* Or Laws 1979, ch 379, § 5, Or Laws 1983, ch 152, § 1, and Or Laws 1983, ch 748, § 9). The owner of a mobile home was required to secure a certificate of title for that mobile home, whether or not it was to be moved on the highways. ORS 481.105(3) (*amended by* Or Laws 1983, ch 748, § 10). The exclusive means of perfecting a security interest in a vehicle covered by a certificate of title, specifically including a mobile home, was by application for and notation of the security interest on the certificate of title. ORS 481.413 (*amended by* Or Laws 1983, ch 644, § 1, and Or Laws 1983, ch 749, § 14).[4]

■ ■    Thus, plaintiff could have perfected its security interest in this mobile home only by securing notation of that security interest on the certificate of title. It did so on December 1, 1978; its security interest, therefore, was perfected when the Bridwells purchased it from Nordmark in December, 1979, and the Bridwells took it subject to that interest. That the mobile home may have been affixed to the land so as to become a fixture is not the determinative factor. *See Far West v. Proaps,* 43 Or App 881, 604 P2d 452 (1979), *rev den* 288 Or 527 (1980) (a modular home as a fixture of the real property not subject to an action for replevin). Because the mobile home was required to be registered and titled under the provisions of ORS ch 481, the fixture filing provisions of ORS ch 79 were expressly inapplicable. ORS 79.3020(3)(b).[5] The notation of plaintiff's security interest on the certificate of

---

[4] The applicable version of ORS 481.413 provided:

"(1) As used in this section, 'vehicle' and 'vehicles' include a mobile home, travel trailer and camper.

"(2) Except as provided in subsection (3) of this section, the exclusive means of perfecting a security interest in a vehicle covered by a certificate of title is by application for and notation of the security interest on the certificate of title in accordance with the provisions of this chapter.

"(3) A security interest may not be perfected by notation of the security interest on the certificate of title if the debtor who granted the security interest is in the business of selling vehicles and the vehicle constitutes inventory held for sale. The filing provisions of ORS 79.4010 to 79.4070 shall apply to security interests in such vehicles.

"(4) The rights and remedies of all persons in vehicles covered by this section shall be determined by the provisions of the Uniform Commercial Code."

[5] ORS 79.3020 provides, in pertinent part:

title of the mobile home perfected it against subsequent purchasers.

Decree dismissing the complaint is reversed; the case is remanded with instructions to enter judgment for plaintiff.

---

"(3) The filing of a financing statement otherwise required by ORS 79.1010 to 79.5070 is not necessary or effective to perfect a security interest in property subject to:

"* * * * *

"(b) The following statutes of this state: *ORS chapters 481*, 488 and 493; but during any period in which collateral is inventory held for sale by a person who is in the business of selling goods of that kind, the filing provisions of ORS 79.4010 to 79.4080 apply to a security interest in that collateral created by him as debtor * * *." (Emphasis supplied.)