Argued and submitted January 5, reversed and remanded for entry of judgment for plaintiff March 17, 1999

## BANKAMERICA HOUSING SERVICES,
a division of Bank of America, FSB,
*Appellant,*

*v.*

## P.D.N. & ASSOCIATES, INC.,
an Oregon corporation,
*Respondent.*

(9609247CV; CA A102183)

977 P2d 396

Stefan W. Farr argued the cause for appellant. With him on the brief was Glenn H. Prohaska.

No appearance for respondent.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

LINDER, J.

## LINDER, J.

In this replevin action, plaintiff appeals from a judgment following a trial on stipulated facts. The trial court concluded that the manufactured structure in which plaintiff had a security interest was not subject to replevin because it became a fixture and because removal would damage the remaining structure. On appeal, plaintiff argues that the manufactured structure never lost its character as personal property because plaintiff's security interest was noted on the structure's certificate of title. We agree and, accordingly, reverse and remand for entry of judgment for plaintiff.

Plaintiff filed a complaint seeking to take possession of a manufactured structure in which plaintiff had already foreclosed its security interest. Defendant acknowledged in its answer that plaintiff had loaned money to defendant's tenants, Loran and Saralynn Leasy, for the purchase of a manufactured structure. By way of affirmative defense, however, defendant asserted that the structure had become a fixture of defendant's realty and that plaintiff's security interest was invalid.

The parties agreed to submit the matter on stipulated facts summarized as follows: Plaintiff has a perfected security interest in a manufactured home that was purchased by plaintiff's debtors and placed on the property that they leased from defendant. Thereafter, the debtors removed the tongue and wheels of the manufactured home, placed it on a foundation, knocked out a wall of an existing structure, and joined the two. The debtors stopped making payments to both plaintiff and defendant.

Both parties submitted written memoranda in which they asked the trial court to determine whether the home had become a fixture and whether plaintiff had a right to remove the home even though removal will leave a hole in the existing structure and will cause some damage. Plaintiff argued entitlement to replevin under *General Electric Credit Corp. v. Nordmark*, 68 Or App 541, 684 P2d 1, *rev den* 297 Or 601 (1984), in which, it contended, we held that a manufactured structure titled in Oregon remains personal property. Defendant argued that this case differs from *Nordmark*

because defendant here obtained title "under a residential lease to fixtures annexed to a dwelling and/or chattels abandoned therein" and that *Nordmark* applies only to subsequent purchasers. The trial court found in favor of defendant. In a letter opinion, the court explained:

"I conclude that the mobile home has become a fixture and as to this defendant is not subject to replevin. * * *

"The facts of this case most closely correlate to a construction lien situation, where *notice must be given to an owner of real property*, who is not the purchaser, if the lender/contractor desires to obligate the owner. Here the original seller of the mobile home should have determined where the mobile home was to be situated. [*Nordmark*] misses the mark in this case."

(Emphasis in original.) On appeal, plaintiff reiterates the arguments made below and asserts that the trial court erred in concluding that *Nordmark* does not apply.[1] We begin by outlining our decision in that case.

In *Nordmark*, the debtor purchased a mobile home and, as part of an agreement, granted a security interest in the mobile home. Thereafter, the debtor installed the home on real property it owned, sold the property (with the home attached), and then defaulted on the loan. *Nordmark*, 68 Or App at 543. The secured party brought an action against the subsequent purchaser to foreclose its security interest in the home. *Id.* at 544. We concluded that, although the mobile home had been affixed to the land, the fixture filing provisions of ORS chapter 79 were inapplicable and the notation of plaintiff's security interest on the certificate of title perfected the security interest as to the subsequent purchaser. We therefore held that the secured party was entitled to foreclose its security interest. *Id.* at 546-47. The subsequent purchaser took the property subject to the secured party's interest.

■ Although *Nordmark* does not directly address the right to replevin or the rights of landlords *vis-a-vis* secured parties, it does involve an examination of the interaction between the fixture provisions of ORS chapter 79, and the then-existing versions of Oregon's certificate of title statutes,

---

[1] Defendant did not file a brief on appeal.

ORS 481.021 and ORS 481.413. Those particular certificate of title provisions have since been repealed. Or Laws 1983, ch 338, § 978. Nonetheless, we conclude that the basic premise in *Nordmark* remains unchanged—manufactured structures are not subject to the fixture filing provisions of Article 9 of the Uniform Commercial Code (UCC), codified as ORS chapter 79.

"Fixtures" are defined as goods that "become so related to particular real estate that an interest in them arises under real estate law." ORS 79.3130(1)(a). Security interests in fixtures must be perfected by a "fixture filing"—which involves filing a financing statement in the office where the mortgage on the real estate would be filed or recorded. ORS 79.4010(1)(a). Upon default, the secured party's right to possession of the fixture is governed by ORS 79.3130(3)-(8).[2]

Oregon, however, is a certificate-of-title state, meaning that security interests in vehicles can be perfected only by notation on the certificate of title recorded with the Department of Transportation. ORS 803.097. When property is subject to the Oregon Vehicle Code, "[t]he filing of a financing statement otherwise required by *ORS 79.1010 to 79.5070* * * * is not necessary or effective to perfect a security interest." ORS 79.3020(3) (emphasis added).

ORS 801.590 defines "vehicle" as "any device in, upon or by which any person or property is or may be transported or drawn upon a public highway and includes vehicles that are propelled or powered by any means." A "manufactured structure"[3] falls under the same titling provisions as

---

[2] We note that, even if the fixture filing statute did apply, the fact that removal will cause damage does not necessarily preclude replevin. With respect to fixtures, ORS 79.3130(8) provides that when a secured party "has priority over all owners and encumbrancers of the real estate, the secured party may, on default, * * * *remove the collateral* from the real estate but the secured party must reimburse any encumbrancer or owner of the real estate who is not the debtor and who has not otherwise agreed for the cost of repair of any physical injury." (Emphasis added.)

[3] "Manufactured structure" means:

"(a) A manufactured dwelling that is more than eight and one-half feet wide;

"(b) A prefabricated structure that is more than eight and one-half feet wide; and

"(c) A recreational vehicle that is more than eight and one-half feet wide." ORS 801.333(1).

"any other vehicle required to be registered" under the code. ORS 820.500. Therefore, the fixture filing provisions are expressly inapplicable to manufactured structures.

Moreover, the Oregon Vehicle Code provides a separate set of provisions governing manufactured structures that become permanently part of the realty to which they are attached. Manufactured structures become fixture-like only if they are exempt from certificate of title requirements under ORS 820.510 and OAR chapter 735, division 140. For example, when a new manufactured structure is located on land owned by the purchaser, the Department of Transportation can exempt the home from titling requirements. Real estate law controls only after an exemption is acquired. *See* ORS 820.510(1)(b), (2).

■    Defendant here did not obtain an exemption from the certificate of title requirement. Nor does the certificate of title reflect defendant's purported "interest." Therefore, plaintiff's general right to possession is governed by ORS 79.5030, which provides:

> "Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action."

That statute plainly provides that the right to possession is not conditioned on whether removal will cause damage. The legislature could easily have imposed conditions on the secured party's right to take possession of a nonexempt manufactured structure, just as it did for fixtures and exempt structures. It did not. Therefore, the trial court incorrectly concluded that the manufactured structure here became a "fixture" and that it was not subject to replevin.

■    Although neither of the parties directly presented any landlord-tenant case law to the trial court, the trial court's reasoning and defendant's arguments appear to track the older common-law scheme that established the rights of landlords, tenants, and secured parties relating to fixtures. Defendant supported its position below by quoting a passage from a footnote in *Nordmark*, in which we noted in passing that written agreements deeming chattels already annexed

to the soil to be personalty are "binding only on the parties and those having actual notice." 68 Or App at 544 n 1. We concluded, however, that because we disposed of the issue based on the statutory perfection scheme, we did not need to address that issue. *Id.* Here, as in *Nordmark*, the statutory scheme, not the security agreement between plaintiff and the debtors, establishes the parties' rights.[4]

The Supreme Court has held that a secured party's right to remove collateral mirrored the tenant's right. *See Glaser v. North's*, 201 Or 118, 124, 266 P2d 680 (1954) ("The [chattel] mortgagee has no better title than the lessee, and, if the tenant would have no right of removal owing to the expiration of the tenancy or his relinquishment of possession, one to whom he has mortgaged the articles would have no such right."). A tenant's right to remove the collateral depended on whether the landlord and the tenant had intended the collateral to become a fixture of the realty. *See Far West v. Proaps*, 43 Or App 881, 883, 887, 604 P2d 452 (1979), *rev den* 288 Or 527 (1980) (applying three-factor test to determine that modular home became a fixture of the real property and was not subject to replevin by lessee).

But that law has changed. *Glaser* predates Oregon's adoption of ORS chapter 79, and both *Glaser* and *Far West* predate the certificate of title provisions for manufactured structures and the provisions in ORS chapter 90, the Oregon Residential Landlord and Tenant Act (ORLTA), that govern the landlord's disposition of tenant property. The ORLTA includes manufactured structures in its definition of personal property. ORS 90.425(1)(e). Under the ORLTA, secured parties are entitled to certain protections, such as notice of their right to repossession. For instance, a landlord must notify a lienholder prior to selling or disposing of a manufactured dwelling abandoned by the tenant. ORS 90.425(4)(a). Furthermore, when a lienholder has properly foreclosed its lien,

---

[4] If anything, defendant's argument cuts against its position that it obtained title to the structure under the lease agreement. The footnote in *Nordmark*, on which defendant relied, was careful to note that the lease agreement would not be binding against others without notice. Nothing in the parties' stipulation suggests that plaintiff here had notice of the lease agreement between the debtors and defendant.

it has the right to obtain the abandoned manufactured dwelling from the landlord. ORS 90.425(16). Thus, for its interest to be binding as against plaintiff, defendant here would have had to record that interest on the certificate of title. Even then, the ORLTA makes it clear that a landlord would take the structure subject to any previously recorded security interests. Although potential damage to the realty has, in the past, been a factor in determining whether replevin should apply in a landlord-tenant situation, ORS chapter 79, the ORLTA, and the certificate of title statutes displace that body of law. Thus, the trial court erred in concluding that the manufactured structure was not subject to replevin.

Reversed and remanded for entry of judgment for plaintiff.