325 P.2d 910

Robert K. DUSENBERRY and Edith C. Dusenberry, his wife, Plaintiffs and Appellants,

v.

TAYLOR'S, a corporation, Defendant and Respondent.

No. 8712.

Supreme Court of Utah.

May 20, 1958.

Aldrich & Bullock, Provo, for appellants. Thomas S. Taylor, Provo, for respondent.

HENRIOD, Justice.

Appeal from a judgment declaring that title to certain carpeting remained in the defendant seller. Affirmed, with costs to defendant.

Appellants urge that 1) the court erred in saying title remained in defendant; that 2) the sales agreement was unenforceable since it violated the statute pertinent thereto;[1] and that 3) defendant was precluded

1. Title 15–1–2a, subd. B(1), Utah Code Annotated 1953, as amended by Chap. 24, § 2, Laws of Utah 1953.

from asserting any claim to the carpeting since plaintiffs were bona fide purchasers for value without notice.

Mr. G. L. Miller and his wife, Eva K. Miller, lived in a home owned by the latter, which she later sold to plaintiffs. The carpeting in question was installed in this home. For several years Mrs. Miller had maintained an account with the defendant merchant under the name "Mrs. G. L. Miller" according to defendant's accounts receivable ledger. However, the carpeting and other items were charged out to "G. L. Miller" on the invoice. Before the carpeting was purchased, Mr. Miller had been interviewed by defendant for credit security. It was defendant's practice to stamp the invoice with the word "Contract" if the transaction were to be handled by written sales contract rather than as an open account. Some invoices were so stamped and others were not. That having to do with the carpeting was not so stamped.

■ Although the carpeting was invoiced to G. L. Miller, unstamped, Eva K. Miller, who had chosen and ordered the carpeting, alone signed a conditional sales contract covering the merchandise, which contract expressly retained title in defendant. Thereafter, Mrs. Miller sold the home to plaintiffs, which home, she said in a letter, "was carpeted." Later Mr. Miller was adjudged a bankrupt. Though the carpeting appears to have been the wall to wall type, there seems to be nothing in the record indicating that it was so attached to the realty as to conclude that it was a fixture in the legal sense of that term. The parties said it was personalty in their express contract. This, coupled with the absence of any evidence to the contrary, except a charge for "smoothedge," prevents us from considering the carpeting to be other than personalty. So concluding would seem to dispose of plaintiffs' third point as to their being bona fide purchasers for value.

■ Anent the problem as to where title lay, we point to the trial court's indication that his decision would depend on what the evidence might reveal as to the intentions of the parties at the time of sale. Defendant's witness testified over the hearsay objection of plaintiffs' counsel, as to what Mrs. Miller said at the time of the sale. Nothing is urged on appeal on that score, and no doubt could not have been urged too strongly whether well taken or not, since the same kind of evidence was elicited on voir dire and cross-examination. Including the evidence mentioned, there appears to be sufficient thereof to support the trial court's conclusion that the contracting parties intended title to remain in the seller and that Mrs. Miller and defendant were the real contracting parties. Under the circumstances, therefore, we cannot disturb such finding on appeal.

386

■ As to plaintiffs' contention that the contract was unenforceable since it was not signed by defendant, this being necessary under the statute,[2] it appears from another provision of the same statute [3] that although the contract may be unenforceable if the provisions of two of the subdivisions are violated, "if the seller, except as the result of an accidental or bona fide error in computation, shall violate any *other* provision of this section, such failure shall in no way affect the validity or enforceability of the conditional sale contract." The provision requiring the signature of the seller, under the wording of the quoted language, would seem to fall within its terms.

■ Although no point is made in this case concerning the validity or construction of the statute or any of its provisions, we cannot help but observe that the provision next last quoted above seems almost absurd, since a literal interpretation thereof compels the conclusion that a conditional sale contract authorized by the statute would be enforceable even though matters couched in mandatory language be omitted, but would be unenforceable if the seller made an accidental or bona fide error in computation. Such language, provocative of the most novel of results, nonetheless is understandable and clear, even though to us there appears on the surface no good reason for enacting such legislation. We cannot say it is void because the legislature used language leading to almost senseless results. This statute in its entirety is a classic example of "now-you-see-it-now-you-don't" legislation, pretending to carry a torch for the unsuspecting buyer and provide him with a shield against the possible unscrupulous, the while it operates in reverse, using language couched in mandatory terms requiring all important terms and signatures to be included in the contract, only to sterilize such injunctions with a neat-turned, almost senseless escape clause.

But very little analysis also will indicate that the innocent sounding phraseology making it appear that the buyer's lot will not be onerous when extended credit, is accompanied by an innocent looking formula that allows the imposition of a charge for

2. Title 15–1–2a, subd. B(1) Utah Code Annotated 1953, as added to by Chap. 24, § 2, Laws of Utah 1953, reads, inter alia: "Every conditional sale contract for the time sale of tangible personal property * * * shall be signed by the buyer or his authorized representative and by the seller or its authorized representative * * *."

3. Title 15–1–2a, subd. B(5), U.C.A.1953, as added to by Chap. 24, § 2, Laws of Utah 1953 provides:

"If the seller, except as the result of an accidental or bona fide error in computation, shall violate any provision of subdivisions (3) or (4) of this subsection the conditional sale contract shall not be enforceable * * *.

"If the seller, except as the result of an accidental or bona fide error in computation, shall violate any other provision of this section, such failure shall in no way affect the validity or enforceability of the conditional sale contract."

the use of money that is one of the highest found in our statutes.

McDONOUGH, C. J., and CROCKETT, J., concur.

WADE and WORTHEN, JJ., concur in result.