Argued July 3, affirmed August 14, petition for rehearing denied September 25, 1962

# DEAN VINCENT, INC. ET AL v. REDISCO, INC.

### 373 P. 2d 995

*Norman J. Wiener,* Portland, argued the cause for appellant. With him on the briefs were Jean P. Lowman and King, Miller, Anderson, Nash & Yerke, Portland.

*Denton G. Burdick, Jr.,* Portland, argued the cause for respondents. With him on the briefs were Hutchinson, Schwab & Burdick, and Buhlinger and Dressler, Portland.

Before MCALLISTER, Chief Justice, and ROSSMAN, PERRY, GOODWIN and LUSK, Justices.

GOODWIN, J.

This is a contest for priority between secured creditors. It arises out of the building of an apartment house. The plaintiff holds a first mortgage on

the real property. The defendant Redisco, Inc., holds a conditional sales contract and a second mortgage for the price of the floor coverings and the installation charges therefor. From a decree according priority to the plaintiff's mortgage, Redisco appeals.

There were a number of other parties and issues in the suit, but they are all peripheral to the question presented here. The first question is whether installed wall-to-wall carpeting can ever become a part of the real property so as to impair the security interest of the unpaid conditional seller. If the answer to that question is negative, then the case would have to be reversed unless there were some other basis for holding that the seller had lost its security interest in this case.

■ If, however, floor covering can sometimes be a fixture, as we believe it can, then it becomes necessary to consider whether the facts of the case at bar operate to make these floor coverings fixtures. See *Plough v. Petersen,* 140 Cal App2d 595, 295 P2d 549, 55 ALR2d 1042, holding that the classification of wall-to-wall carpet in a case of this character depends upon a consideration of all the facts. In that case the carpet was held to be personal property. If carpet can become part of the real property, we then must decide whether to apply in this case the general rule that treats as real property such items of personal property as may have lost their personal-property characteristics when they were built into a permanent improvement upon the land of another.

Redisco takes the position that carpeting can never become a part of the real property in the sense that pipe, lumber, paint, and nails, among other things, may, and therefore that carpeting can always be repossessed by an unpaid conditional seller. The statement gains

superficial support from a number of decisions. See *Dusenberry v. Taylor's,* 7 Utah2d 383, 325 P2d 910: and Annotation, 55 ALR2d 1044. There is equally respectable authority contra. See, e.g., *Joiner v. Pound,* 149 Neb 321, 31 NW2d 100.

■ The plaintiff, on the other hand, while recognizing that an unpaid conditional seller ordinarily retains title to and may repossess personal property sold under such an arrangement, contends that under the peculiar facts of this case the goods sold and delivered were installed in the apartment house under such circumstances as to make them a part of the real property, and thus fixtures. If the plaintiff is correct, the carpet is subject to the lien of the first mortgage.

The facts are not remarkable. The promoters of a seventy-unit apartment house obtained a construction loan from the plaintiff and began to build. As not infrequently occurs, the disbursements of the project exceeded the proceeds of the construction loan. Some of the goods and services which went into the project were not paid for.

The specifications for the finished building called for wall-to-wall carpeting throughout. The first floor was to be a cement slab covered by the usual padding and wall-to-wall carpeting of various grades and specifications. Upper floors were to be constructed of plywood and covered by padding and wall-to-wall carpeting. The building was constructed accordingly. All carpeting was installed by professional installers. The devices employed by the installers were those commonly used in such installation. The proof showed that the carpeting could be removed by persons skilled in such work, and could be reinstalled elsewhere, although the economic feasibility of such an undertaking was doubtful. The proof also showed that if

the carpeting under discussion had not been installed, some other kind of floor covering would have been required before the building could have been considered complete.

The proof further showed that none of the interested parties was deceived, confused, or misled concerning the material facts. Relevant facts were disclosed to all parties, or could have been learned by reasonable inquiry. There is thus no occasion to concern ourselves with equitable considerations which could be material in a case where secrecy, nondisclosure, or other iniquitous practices might affect the rights of the parties. Cf. *Plough v. Petersen,* supra, where the defaulting conditional buyer had also pledged the carpet as security under a chattel mortgage.

■ Carpeting, like electrical ornaments, plumbing bowls, hardware, and an infinite variety of other personal property, may or may not be so annexed to the real property as to lose its identity as personal property. *Joiner v. Pound,* supra. Whether such property retains its character as personal property or loses its separate identity in the real property depends upon a combination of factors. These factors are usually spoken of as annexation, adaptation, and intention. Intention is the most important and the most difficult factor to apply. It must be objective, and not some secret plan or mental reservation. See Oregon cases collected in Note, 19 OLR 152 (1940). Since we have had occasion to cover these general principles recently in *Highway Com. v. Feves et al,* 228 Or 273, 365 P2d 97, we will not here repeat all that was said there.

Except for the semantical influence of cases concerning "rugs", there is no reason to say that installed

floor covering is any more or less movable than installed plumbing fixtures, as either may be removed by experts, properly outfitted with tools, without doing appreciable harm to the freehold. See *Roseburg Nat. Bank v. Camp*, 89 Or 67, 73-74, 173 P 313, 315, where we said:

"The old rule that all things annexed to the realty become a part of it has been much relaxed. Annexation is not the sole test for determining whether a fixture is removable or irremovable. The line between removable and irremovable fixtures is sometimes so close and difficult to ascertain that it is impossible to frame a precise, unbending and infallible rule which can be applied to all cases. Each case must depend largely upon its own special facts and peculiar circumstances * * *."

The record shows that the trial judge had our former cases in mind when he ruled upon the question below. His ruling was based upon a careful consideration of the intention of the parties as disclosed by their behavior. He also considered the manner of installation (annexation), and the actual as well as the intended adaptation and adaptability of the material installed. Insofar as his evaluation of the facts is concerned, we can find no basis for reaching a different conclusion.

It may well be true that Redisco did not intend to give up the security title it retained under its conditional sales contract. However, no vendor is likely to intend to forfeit any security. The important question is not what the vendor intended, but what an objective bystander would make of the total factual situation.

Given the fact that the seller of the carpet retained title under its conditional sales contract, there is still nothing to distinguish the sale of the carpet and its

installation in the building from the sale of washbowls, kitchen sinks, and doorknobs. For all the record shows, some of these goods also may have been sold under title-retaining contracts. The intention of the seller, secured and unsecured, thus can shed little, if any, light upon the specific intention relevant to the question now before us. The controlling intent would seem to be that of the buyer and seller concerning the function of the floor covering. Did the parties intend that the floor covering be installed in the building, there to remain during its useful life, or did they intend to put down the floor covering to be used as such only until someone might see fit to take it out and use it elsewhere?

Since it is reasonable to assume that all parties expected the financial aspects of the transaction to proceed according to plan, the principal intention of the parties, from a functional point of view, was to put the carpet down and leave it there until it wore out. If such was their intention, then the nature of the order to the factory for custom-made carpet and the cutting and fitting within the seventy units is completely consistent with the view taken by the trial court that the floor covering was intended to become a permanent part of the building.

■ The possibility of a miscarriage in the financial arrangements no doubt occurred to the sellers, at least, and may have prompted their employment of a title-retaining contract of sale. This type of contract is not unusual, however, in the sale of fixtures of all kinds. The Legislative Assembly has devoted attention to the security aspects of sales of fixtures. ORS 76.010 to 76.030 (applicable during the period covered by the transactions now before the court) and ORS 79.3130 (scheduled to take effect September 1, 1963, as part

of the Uniform Commercial Code). Under both sections of the code, the old and the new, the results in a given case may differ, but the determination of the character of the goods sold as either real or personal property is left to the common law. A thing does not become, or fail to become, a fixture by reason of the type of contract under which it is sold. If the merchandise does become a fixture, and if it was sold under a title-retaining contract, then the rights of the parties may be subject to certain statutory rules, e.g., ORS 76.010. However, in the case at bar there was no attempt to comply with the statutory law on the subject, and we need not concern ourselves with hypothetical questions that might have arisen under the code. We have only to decide whether the floor covering became a fixture under the common-law rules found in our cases.

The facts in the case at bar are to be distinguished from those found in what might be called the majority of cases typified by *Dusenberry v. Taylor's,* 7 Utah2d 383, supra. But cf. *Doll v. Guthrie,* 233 Ky 77, 24 SW2d 947, and *Nicklas v. Pickford,* 289 NY Supp 174, 160 Misc 254 (linoleum). Most of the cases holding that carpeting is not part of the real property proceed on the theory that, since rugs were movable in the days before installed wall-to-wall carpeting became common, there is some sort of common-law rule that carpeting is always movable. See *Joiner v. Pound,* supra, 149 Neb at 324. Some cases suggest that, until it is paid for, carpeting is intended to be movable, at least for the purpose of protecting the interest of an unpaid conditional seller. If such a rule is sound, it could, and should, apply equally to water closets. It does when the statute (ORS ch 76) is followed.

Whatever may be the better rule in the ordinary

transaction when carpeting is installed over some other kind of finish flooring, the trial court correctly treated the floor covering in this case as a fixture. The seller knew it was supplying material that was being built into new construction. The seller knew that its carpet was the finish flooring of the building. The seller also knew, or had constructive notice, that the building was subject to the lien of a first mortgage which specifically provided that it would include all fixtures and installations to be attached to the property during the period of construction. While not controlling, the fact that the seller also took a second mortgage on the real property as additional security is some evidence of its knowledge that the carpeting was being installed as a permanent part of the building, which, as a practical matter, would render the conditional sales contract inadequate as security from a purely monetary point of view.

There is no particular policy or equitable reason to favor either party in a transaction of this character. To permit the conditional seller of merchandise to go into the building and remove part of the building is no better or no worse than to wash out the security of the seller by forbidding such relief. The parties were dealing at arms' length at all times.

The first mortgage is a prior lien on the building and its fixtures. The carpet is a fixture under all the tests of annexation, adaptation, and functional intention. We concur in the trial court's analysis of the factual situation, and in its application of the law of fixtures.

In view of the foregoing, it is not necessary to consider other grounds urged by the plaintiff in support of the trial court's decree.

Affirmed.