Argued and submitted October 15, reversed
December 24, 1979, reconsideration denied January 31,
petition for review denied February 12, 1980 (288 Or 527)

# FAR WEST MODULAR HOME SALES, INC.,
*Respondent,*

*v.*

## PROAPS, et ux,
*Appellants.*

### (No. 24928, CA 12775)

604 P2d 452

Richard L. Cowan, Salem, argued the cause for appellants. With him on the brief was Jerry G. Kleen, Salem.

Kenneth E. Shetterly, Dallas, argued the cause for respondent. With him on the brief was Hayter, Shetterly, & Weiser, Dallas.

Before Tanzer, Presiding Judge, and Thornton and Campbell, Judges.

CAMPBELL, J.

Thornton, J., dissenting.

## CAMPBELL, J.

In this replevin action the plaintiff sought to recover the possession of a modular home. The parties waived a jury, and following trial to the court, judgment was entered for the plaintiff. The defendants have appealed, and we reverse.

In July 1977 the plaintiff contracted to sell a modular home to the defendants. In January 1978 the home was delivered in two sections from plaintiff's factory to the defendants' property. It was of wood construction, and was mounted and secured on a concrete foundation by bolts and nails. It was connected to sewer, water and electric outlets. When the modular home was in place it measured 60 feet by 24 feet and its accommodations included three bedrooms and two baths. The defendants and their family used it as a residence.

A dispute arose over the price and the plaintiff filed this replevin action. The trial court found that the modular home was personal property. The defendants appealed and have assigned as the only error:

"The court erred in concluding that the modular home should be treated as personal property, thereby subject to replevin, and awarding same to Plaintiff."

The defendants contend that the modular home was so affixed to their real property that it lost its character as personalty and, therefore, was not subject to replevin.

The test for determining whether property retains its character as personal property, or loses its separate identity and becomes a fixture, is composed of three factors: annexation, adaptation and intention. *Marsh v. Boring Furs, Inc.*, 275 Or 579, 581, 551 P2d 1053 (1976); *Highway Comm. v. Empire Building*, 17 Or App 616, 625, 523 P2d 584 (1974).

The plaintiff in its brief in this court concedes "the modular home was adaptable to the real property upon

which it was placed." Therefore we will consider only the questions of annexation and intention.

The degree of annexation necessary to turn a chattel into a fixture depends upon the circumstances of the particular case. Annexation of a chattel to real property may be either actual or constructive. *Marsh v. Boring Furs, Inc., supra,* at 582[1]; *Dean Vincent, Inc., v. Redisco, Inc.,* 232 Or 170, 175, 373 P2d 995 (1962); *Empire Building, supra,* at 625.

The plaintiff in effect argues that the physical attachment of the modular home to the real property was so slight that the annexation factor was not satisfied. It points to the testimony of its witnesses that the home could be unbolted, the utilities unhooked, and the entire unit removed from defendants' property in less than an hour. The removal operation would require a crane and two trucks equipped with lowboys at a total cost of $2,500. It would cost an additional $2,200 to remove the concrete foundation and restore the defendants' land to its previous state.

Since there is no requirement that a chattel actually be attached to the real property to satisfy the annexation test, *Marsh v. Boring Furs, Inc., supra,* at 582, testimony illustrating the ease with which the modular home could be removed is not controlling. Rather, the fact that this chattel is a home, coupled with evidence that it was bolted and nailed to a foundation and connected to all utilites, established that it

---

[1] The *Marsh* court noted in footnote 2, 275 Or at 582, that the concept of constructive annexation is explained in Brown on Personal Property § 16.3 at p. 524:

" 'There sometimes arise cases where, though a particular chattel may not be physically attached to the land at all, its adaptation to the use to which the land is put is so pronounced that any reasonable person would consider that the article in question wás an integral part of the realty. In these cases it is customary to say that the article in question is "constructively annexed," which, interpreted, means that though not annexed in fact, it will be treated in law as if it were annexed. Thus is preserved in form, but not in fact, the factor of physical attachment as a requirement of a fixture.' "

was annexed to defendants' real property. This conclusion is further supported by the fact that it would cost $4,700 to remove the modular home and restore the land.

The paramount factor in the determination of whether a chattel has become a fixture is the objective intent of the annexor to make the item a permanent accession of the freehold. *Marsh v. Boring Furs, Inc., supra,* at 579; *Empire Building, supra,* at 626. The annexor's intent can be inferred from "the nature of the article, the relation (to the realty) of the party annexing, the policy of law in relation thereto, the structure and mode of annexation, and the purpose and use" for which the item was annexed. *Johnson v. Pacific Land Co.,* 84 Or 356, 361, 164 P 564 (1917). The annexor's objective, controlling intent, is determined from all the circumstances. 84 Or at 362. *See Empire Building, supra,* at 626.

We begin with the presumption that a building or similar structure is a fixture and therefore a part of the real property. *Pepin v. City of North Bend,* 198 F Supp 644, 646 (1961), *citing Waldorf v. Elliott,* 214 Or 437, 440-41, 330 P2d 355 (1958). Also, when annexation is made by an owner of realty, an intent to affix may more readily be found. *See Highway Com. v. Feves,* 228 Or 273, 278, 365 P2d 97 (1961), and the cases cited therein. The fact that here the vendor physically placed the unit on defendants' property does not detract from defendants' status as the annexing party. Moreover, the fact that the home was to be manufactured elsewhere in two large sections before being placed on the homesite does not detract from defendants' objective intent to affix the home to their land. For example, in reaching the conclusion that large grain tanks on a farm were fixtures, the Oregon Supreme Court stated that the fact that the tanks "came in a 'knocked down' condition affects their character [as fixtures] little, especially in this age of prefabrication when great and permanent edifices are

[885]

constructed literally out of the package." *Waldorf v. Elliott, supra,* at 440-441.

The plaintiff argues "that no reasonable person would intend that a modular home lost its identity as personal property simply by dropping it on the foundation which had been prepared for it." Instead, plaintiff continues, "reasonable people would [intend] that the modular home would become a fixture contemporaneously with the payment of the purchase price." We find it relevant that plaintiff by implication admits that the installed home would become a fixture. However, plaintiff has not cited us a case, and we have been unable to find one, that holds payment of the purchase price is controlling as to the parties' intention.[2]

A modular home has been defined as "a structure which is prefabricated in a factory and delivered to its intended site where it is installed on a foundation." *Prospecting Unlimited, Inc. v. Norberg,* 376 A2d 702, 703 (Rhode Island 1977). The *Norberg* court went on to hold:

> "that once the modules were actually incorporated into completed houses, they became part of the real estate just as any other house usually does. When the houses were completed, the modules were not removable without damage to themselves or the realty. Furthermore, they were permanently fastened to their foundations, were intended to remain so, and were adapted for use as housing, as was the realty to which they were attached."

376 A2d at 705.

By way of comparison, the Washington Court of Appeals has held that certain mobile homes which had not lost their identity as mobile units remained personal property. In reaching its conclusion, the court noted that "although the hitches and wheels were removed, the axles were left on the units. They were

---

[2] Although the terms of the parties' contract might influence or even control the determination of intent to affix, their sale agreement was not offered in evidence.

placed on blocks rather than permanent foundations, and the utility connections . . . [were] not fixed pipes but flexible hoses which . . . [could] easily be connected." *Clevenger v. Peterson Construction Company, Inc.,* 14 Wash App 424, 542 P2d 470, 471 (1975).

In *Empire Building, supra,* at 626, this court held that:

"* * * [U]nder certain circumstances, an article may be determined to be a fixture as a matter of law. *Masheter v. Boehm,* 37 Ohio St2d 68, 307 NE2d 533 (1974); *Bay State York Co. v. Marvix, Inc.,* 331 Mass 407, 119 NE2d 727, 729 (1954). This occurs when 'the evidence may be so clear that only one conclusion can be drawn therefrom, and in such cases the court will take the matter from the jury and itself decide the case, it being said, perhaps metaphorically, that the question is one of law.' "

We are of the opinion that in this case the evidence is so clear that the only conclusion that can be drawn therefrom is that the modular home was a fixture of the real property and therefore not subject to an action of replevin.[3]

Reversed.

**THORNTON, J.,** dissenting.

This is a law action tried to the court without a jury. The court found from the evidence

" * * * that the modular home should be treated and considered as personal property."

Whether or not an article annexed to the real property is a fixture is a question of fact to be determined upon the evidence in a particular case, and the question is determined not only by the manner in which the article is affixed to the realty, but also by the relationship of the parties to the controversy. *Bell v. Bank of Perris,* 52 Cal App 2d 66, 125 P2d 829, 833 (1942).

---

[3] We have only considered and recited facts which were undisputed or which were a part of the testimony of the plaintiff's witnesses.

In a law action tried to the court the findings of the trial judge on disputed issues of fact are treated the same as a jury verdict. The appellate court considers the evidence and all favorable inferences that may be drawn from such evidence in a light most favorable to the prevailing party in the trial court. If those facts are supported by any substantial evidence, they will not be reviewed on appeal. *Hassan v. Guyer,* 271 Or 349, 352, 532 P2d 227 (1975); *White v. Bello,* 276 Or 931, 933, 556 P2d 1362 (1976). Here there is substantial evidence in the record supporting the trial court's conclusion on the disputed issue whether the modular home was to be considered as personal property or real property.

I would therefore affirm.