## Sorbello v. Sorbello

*John H. Broujos,* for plaintiff.
*Murrel R. Walters, III,* for defendant.

SHUGHART, *P.J.,* August 25, 1981—Rosario

Sorbello, plaintiff, brought an action in divorce against his wife, Charmian Sorbello, on June 18, 1980, which was amended by stipulation of counsel on September 10, 1980. In her answer and counterclaim, the wife did not contest the divorce, but raised the issues of: distribution of marital property, alimony, and counsel fees. Pursuant to section 304 of the Divorce Code of April 2, 1980, P.L. 63, sec. 101, 23 P.S. §304, (hereinafter Divorce Code), Richard W. Stewart, Esq., was appointed master to hear testimony on the issues. After three hearings, the master filed his report and recommendations. Both parties have filed exceptions to this report.

The master found that the parties lived separate and apart for a period of more than three years, that their marriage is irretrievably broken, and that both consent to the divorce; therefore, he recommended that a decree of divorce be granted. No exceptions were filed to this recommendation. Since the statutory grounds for divorce have been met, a decree of divorce will be entered.

No exceptions were filed to the master's findings of fact and recommendation concerning the issue of alimony. Accordingly, the master's recommendation that no alimony be granted is accepted. Two issues remain contested: (1) distribution of marital property, and (2) counsel fees.

I

The most hotly disputed issue and unquestionably the one most difficult to resolve is the equitable distribution of marital property. The legislature has directed that the courts shall "equitably divide, distribute or assign the marital property between the parties without regard to marital misconduct in such proportions as the court deems just after considering all relevant factors including: [ten enu-

merated factors]." Divorce Code, 23 P.S. §401(d). Although the presumption is that all property acquired by either party during the marriage is marital property, the Divorce Code contains seven exceptions. See 23 P.S. §401(e)-(f). The initial question, then, is whether the master properly classified property as marital or nonmarital.

## A

First, we will consider the real estate in dispute. The master found that since the property at 2240 Orchard Road, Lower Allen Township, was a gift, it is nonmarital property, excluded from equitable distribution. The husband argues, however, that the real estate constitutes marital property within the meaning of section 401 of the Divorce Code and is not excluded under subsection (e). On the other hand, the wife argues that the real estate is excluded from marital property by a valid agreement, and also because she acquired it as a gift. See Divorce Code, 23 P.S. §401(e)(2)-(3). To support her argument, the wife has quite appropriately called attention to an equity case previously before this court involving the same parties.

In February 1974, the husband conveyed the Orchard Road property, then held as tenants by the entireties, to his wife. On September 24, 1976, the husband filed an action in equity seeking the imposition of a constructive trust on the property. The chancellor refused to impose the trust, Sorbello v. Sorbello, 28 Cumberland 1 (1977), but later the court en banc reversed. On appeal to the Superior Court the chancellor's findings of fact and conclusions of law were reinstated and the husband lost his effort to have a constructive trust declared: Sorbello v. Sorbello, 272 Pa. Superior Ct. 424, 416 A. 2d 529 (1979).

The action in equity brought by the husband in 1976 concerned the same transaction at issue in this case: the 1974 conveyance of the Orchard Road property to the wife. Having brought the first action, the husband had a "full and fair opportunity to litigate the issue." In re Estate of Ellis III, 460 Pa. 281, 287, 333 A. 2d 728, 731 (1975) (relitigation of issue of contractual relationship barred by collateral estoppel). The husband had the burden of proving that the wife would have been wrongfully or unjustly enriched by retention of the Orchard Road property, and, as evident by the chancellor's opinion, he failed to meet that burden. Instead, the chancellor found that the conveyance of the property from the husband to his wife was a gift, Sorbello v. Sorbello, 28 Cumberland 1, 7-8 (1977), and this was affirmed on appeal, Sorbello v. Sorbello, 272 Pa. Superior Ct. 424, 416 A. 2d 529 (1979). We are bound by this determination. The husband had one chance to convince a court that the conveyance was not a gift; he is not entitled to another. "[C]ollateral estoppel prevents relitigation of issues of fact or law actually litigated and determined by a valid and final judgment in the first action." Lebeau v. Lebeau, 258 Pa. Superior Ct. 519, 525, 393 A. 2d 480, 482-83 (1979). Not only was the issue litigated, but also its resolution (finding of a gift) was *essential* to the chancellor's decision to refuse imposition of a constructive trust. It is of no consequence that the first action was in equity and the second in law: Exner v. Exner, 268 Pa. Superior Ct. 253, 407 A. 2d 1342 (1979). Accordingly, the classification of the conveyance of the Orchard Road property as a gift must be deemed settled by the prior equity case.

The husband argues, however, that even if the property was a gift, it should not be excluded from

equitable distribution since subsection 401(e)(3) of the Divorce Code "does not adequately consider the effects of a gift between husband and wife during marriage." While we do not know to what extent the legislature considered the effects of such gifts, the statutory language is clear: "(e) For purposes of this chapter only, 'marital property' means all property acquired by either party during the marriage except: . . . (3) Property acquired by gift, bequest, devise or descent except for the increase in value during the marriage." Divorce Code, 23 P.S. §401. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Statutory Construction Act of 1972, 1 Pa.C.S.A. §1921(b). No ambiguity exists here: nowhere does the statute indicate that interspousal gifts do not fall within the exclusion in subsection 401(e)(3), and nowhere does the statute specifically include interspousal gifts as marital property. Moreover, there is no reason to think the meaning of "gift" in this statute differs from that meaning applied in Sorbello v. Sorbello, 28 Cumberland 1 (1977); the same analysis of the conveyance would be required. The result is inescapable when applying the facts of this case to section 401: the Orchard Road property is nonmarital property.[1]

Not only is the real estate nonmarital property, but also most of the increase in value of the real

---

1. Although the real estate, as nonmarital property, is not subject to equitable distribution, still it is a "relevant factor" to be considered when distributing marital property. See Divorce Code, 23 P.S. §401(d). In light of the strong possibility that the husband would lose possession of the house even if it had been found to be marital property, perhaps much ado is being made over an issue of little consequence.

estate is nonmarital property, excluded from equitable distribution. The master's finding that marital property includes the increase in value of the Orchard Road property from February 1974 (date of conveyance) to June 1980 (date divorce action filed) is rejected. Instead, only that increase in value from the date of the gift, February 1974 (M.R. 3),[2] to the date of final separation, October 1974 (M.R. 2), is marital property, and this figure is not included in the testimony.

We interpret subsection 401(e)(3) of the Divorce Code to mean that property acquired by gift, bequest, devise, or descent is nonmarital property, except for the increase in value from the beginning of the marriage to the date of final separation. Although on its face the statutory language—that "the increase in value during the marriage [is marital property]," 23 P.S. §401(e)(3)—appears clear and unambiguous, the meaning of that subsection is immediately brought into question by the very next subsection.[3] Subsection 401(e)(4) clearly exempts from marital property all property acquired after the final separation. Thus, two different cut-off dates appear in the same section of the Divorce Code. The inconsistent results are obvious. For instance, suppose W receives an inheritance of $100,000 and one day later H leaves her for another woman. W and H, who had been married for only a short period of time, then live apart for the next three years before seeking a divorce. Meanwhile,

2. Reference to pages are to the master's report filed April 7, 1981.

3. Subsection 401(e)(4) excludes from marital property: "(4) Property acquired after separation until the date of divorce, provided however, if the parties separate and reconcile, all property acquired subsequent to the final separation until their divorce." Divorce Code, 23 P.S. §401(e)(4).

the $100,000 inheritance, nonmarital property, has "increased in value" substantially. But the interest earned over the three years is also "property acquired after separation," and as such, would be excluded from marital property status by subsection 401(e)(4) of the Divorce Code. Under which subsection does it fall, then? Is the interest an "increase in value" of an inheritance or "property acquired"? Consequently, marital or nonmarital property? Which cut-off date should be used—the date the marriage ends or the date of final separation? As this hypothetical should demonstrate, the date of final separation is the just decision.

Interpreting "during the marriage" in subsection 401(e)(3) of the Divorce Code to mean from the date of marriage until the date of final separation best represents the legislature's intent (as clearly indicated by subsection 401(e)(4)): to establish the date of final separation as the date the separated parties cease to accrue the financial benefits of marriage, i.e., the harvest from the other party's good fortune (gifts) and toils. Moreover, the consequences of a contrary interpretation—a permissible consideration in the interpretation and construction of statutes, Statutory Construction Act of 1972, 1 Pa.C.S.A. §1921(c)(6)—undoubtedly do not represent the intent of the legislature. As shown by our hypothetical, H, who has no intention of reconciling, could merely refuse to consent to a divorce and sit back to reap the benefits from the increase in value of W's separate property. Meanwhile, W would be getting no marital benefits in return. This incentive to delay a divorce merely for financial gain would increase as the potential for large gains in the value of the other spouse's nonmarital property increases. The legislature clearly could not have intended such an absurd result.

Although unliquidated, the value of defendant wife's house is now approximately $20,000 more than it was when she and her husband separated. In effect, she has acquired that property ($20,000) since the final separation. There is simply no justification for classifying it marital property.[4] Because the parties' final separation occurred so soon after the husband gave the house to his wife (eight months), the value which must be considered marital property is negligible and unworthy of further consideration.

In addition to the husband's disagreement over the Orchard Road property, he also disagrees with the master's findings that the husband's military and teacher's retirement pays are marital property. As the result of a recent Supreme Court decision in McCarthy v. McCarthy, 49 U.S.L.W. 4850 (1981), we must agree with the husband that his military retirement pay is not marital property. The court in McCarthy held that Federal law precludes a state court from dividing military nondisability retirement pay pursuant to state community property

---

4. The community property system, although different from the marital property concept of the Divorce Code, is similar enough to provide insight into the basis for the equitable distribution of marital property. "The rationale for the community property system is the idea that the efforts of both husband and wife are equally necessary to the successful maintenance of a marriage, that while the material contributions of each spouse may be unequal, both desire to use their efforts to advance the best interests of the marriage. Therefore, whatever the labor or talent of each spouse can produce belongs to both spouses equally, as the representatives of the marriage, and is called community property." 4A.R. Powell, Real Property §624.4 (1979) (footnote omitted). We believe the rationale for the marital property system is much the same. Consequently, once the marriage is irretrievably broken, as determined by the date of final separation, the basis for continuing the acquisition of marital property no longer exists.

laws. Instead, such pay is the separate property of the retiree. Although McCarthy involved community property laws, the effect on marital property laws is similar: military retirement pay is not subject to equitable distribution.[5]

The husband's teacher's retirement pay presents a different situation; it has been properly classified as marital property. Subsection 401(f) of the Divorce Code establishes the presumption that all property acquired during the marriage is marital property unless excluded in subsection [401](e). Although certain veteran benefits are exempted, subsection (e) does not exclude any other form of benefits or pensions. In other words, the presumption of marital property is not overcome. Pension and retirement benefits have also been classified as marital property in other jurisdictions with property distribution statutes similar to Pennsylvania's. E.g., Leighton v. Leighton, 81 Wis. 2d 620, 261 N.W. 2d 457 (1978); DeRevere v. DeRevere, 5 Wash. App. 741, 491 P. 2d 249 (1971). In Colorado and Illinois,[6] pension benefits, *to the extent earned during marriage,* are marital property. In re Marriage of Mitchell, 195 Colo. 399, 403, 579 P. 2d 613, 616 (1978); Pieper v. Pieper, 79 Ill. App. 3d 835, 840, 398 N.E. 2d 868, 871 (1979). Because the husband "acquired" his benefits while employed by the West Shore School District *during his marriage* with

5. That is not to say, however, that the courts cannot consider such income in equitably dividing the marital property. Source of income is just one of several enumerated factors relevant to an equitable distribution of marital property. See Divorce Code, 23 P.S. §401(d).

6. Colorado and Illinois define marital property as "all property acquired by either spouse subsequent to the marriage" subject to several exceptions—none which concern pension benefits: Colo. Rev. Stat. §14-10-113(2) (1973); Ill. Ann. Stat. §503(a) (Smith-Hurd 1980).

defendant, the retirement pay is marital property.

This same analysis does not render Social Security benefits subject to equitable distribution; indeed, such benefits are not marital property. Whereas, in general, individuals accrue property rights to pensions, a form of deferred compensation, they accrue no property rights to Social Security benefits: Flemming v. Nestor, 363 U.S. 603, 608 (1960). As the court stated in Flemming:

"The Social Security system may be accurately described as a form of social insurance, enacted pursuant to Congress' power to 'spend money in aid of the "general welfare,"' Helvering v. Davis, supra [301 U.S. at 640], whereby persons gainfully employed, and those who employ them, are *taxed* to permit the payment of benefits to the retired and disabled, and their dependents. . . . But each worker's benefits, though flowing from the contributions he made to the national economy while actively employed, are not dependent on the degree to which he was called upon to support the system by taxation. It is apparent that the *noncontractual interest* of an employe covered by the [Social Security] Act cannot be soundly analogized to that of the holder of an annuity, whose right to benefits is bottomed on his contractual premium payments.

". . .

"To engraft upon the Social Security system a concept of 'accrued property rights' would deprive it of the flexibility and boldness in adjustment to ever-changing conditions which it demands." Id. at 609-10 (emphasis supplied).

This holding is buttressed by more recent comments of the court:

"In 1975, Congress amended the Social Security Act to provide that all federal benefits, including

those payable to members of the armed services, may be subject to legal process to enforce child support or alimony obligations. [Citation omitted.] In 1977, however, Congress added a new definitional section (§462(c)) providing that the term 'alimony' in §659(a) 'does not include any payment or transfer of property . . . in compliance with any community property settlement, *equitable distribution of property,* or other division of property between spouses or former spouses.' (Pub. L. 95-30, §501(d), 91 Stat. 159, 42 U.S.C. §662(c) (1976) ed., Supp. III). As we noted in Hisquierdo [v. Hisquierdo, 439 U.S. 572 (1979)], it is 'logical to conclude that Congress, in adopting §462(c), thought that a family's need for support could justify garnishment, even though it deflected other federal benefits from their intended goals, but that community property claims, which are not based on need, could not do so.' 439 U.S., at 587." McCarthy v. McCarthy, 49 U.S.L.W. 4850, 4855 (1981) (emphasis supplied). Accordingly, in the absence of Congressional approval, Social Security benefits will not be subject to equitable distribution under Pennsylvania's Divorce Code.

The last item of property at issue here is the green wall-to-wall carpet that the master found to be the husband's separate property (M.R. 9). We reject the master's finding and hold that the carpet is the separate property of the wife. When the husband annexed his personal property, the carpet, to his wife's separately-owned realty, the carpet became a fixture, converted into realty. See O'Donnell v. Schneeweis, 73 D. & C. 2d 400, 22 Chester 433 (1975); accord, Dean Vincent, Inc. v. Redisco, Inc., 232 Or. 170, 373 P. 2d 995 (1962). Moreover, a husband who voluntarily places fixtures on his wife's land is presumed to be making a *permanent* im-

provement; the fixture then becomes part of the realty: Albert v. Uhrich, 180 Pa. 283, 36 Atl. 745 (1897). Accordingly, the wall-to-wall carpet, as part of the wife's separate realty, is not subject to equitable distribution.

We conclude that the remainder of the master's findings concerning the classification of property as marital or nonmarital is proper and supported by the evidence. Those findings are hereby adopted.

## B

In the distribution of marital property, we must be guided by those factors enumerated in subsection 401(d) of the Divorce Code. Obviously, the master also considered those factors in making his decisions about the equitable distribution of the marital property. According to his report, he took "into consideration the great length of time that the parties have been married. Both parties have made substantial contributions to the acquisition of the marital property. . . . The husband is of retirement age and his health problems will not permit future employment. Thus, there is a need for an adequate source of income to maintain a reasonable standard of living. The wife is younger and does have the present ability to earn a living. The wife does have a need for adequate assets to re-establish a suitable standard of living and to serve as a source of security." (M.R. 7-8)

The parties have filed exceptions to certain findings of fact on which the master's recommendations were based. The wife claims two errors: (1) that the master erred in finding that the "[wife's] desire to pursue a career in the theatre helped to dissipate the marital property," (M.R. 4) and (2) that the master erred in not finding that the wife contributed to the acquisition of marital

property through money she earned as a school teacher and as a part-time actress. This same topic (contributions to the acquisition of marital property) concerns the husband: he argues that the master erred in finding that "[b]oth the [husband] and the [wife] have made substantial contributions to the acquisition of the marital property, the [husband] through his contributions as a wage earner and the [wife] through her contributions as a homemaker." (M.R. 4)

The wife, as a homemaker, unquestionably contributed to the acquisition of marital property. A dollar amount cannot be set; nevertheless, her substantial contribution is a relevant factor. Similarly, her income from the teaching position was a contribution, albeit a small one in light of the time involved. Whether the wife's income from her work as an actress actually contributed to the acquisition of marital property is debatable. Expenses may have outweighed income. Either way, the weight of this factor is minimal.

The wife's concern over the master's finding that her interest in the theatre helped to dissipate the marital property is understandable: the master might have found that the husband's refusal to move to New York with his wife helped to dissipate the marital property. Nevertheless, there is good reason for the master's finding: the wife pursued a venture with little financial reward during which time her consumption of marital property exceeded her contribution. A valid consideration is whether an estranged husband should be required to help finance such a venture. Like most factors considered in the equitable distribution of marital property, a dollar value cannot be affixed. Suffice to say that the overall circumstances of the parties' marriage, including the last ten years, have been considered without passing judgment on the appropri-

ateness of either party's deviation from traditional roles. The goal is but one: to "effectuate economic justice between [the divorced] parties . . . and [to] insure a fair and just determination and settlement of their property rights." Divorce Code, 23 P.S. §102(a)(6).

With that in mind, the husband's exception that "[t]he Master erred in not making a finding of fact with respect to the contribution by the [husband] to the [wife's] education, occupation, and theater interests," while acknowledged, does not carry too much weight. After all, his contributions arguably could be outweighed by his interference with the wife's career—interference which may have reduced the wife's potential income-producing capacity.

Lastly the husband's argument that the wife's disposal of certain property was not in good faith and for value is unpersuasive. At the heart of the "good faith" determination is the credibility of the witnesses.

"The court has the duty to make a complete and independent review of all the evidence presented in a divorce action. . . . However, where the issue is one of credibility and the master is the one who heard the testimony and observed the demeanor of the witnesses the reviewing court must give his findings regarding credibility the fullest consideration. [Citations omitted.] Rollman v. Rollman, 280 Pa. Superior Ct. 344, 351, 421 A. 2d 755, 758 (1980). Having reviewed the record with this in mind, we adopt the master's finding of fact number 23: "The [wife] disposed of items 1 through 5 in IB of the [husband's] inventory in good faith and for value prior to the time the within action was commenced." (M.R. 4)

Similarly, the master's finding regarding the

Paul Klee painting is accepted. Apparently, the master found the wife's testimony concerning disposition of the painting incredible: he included the painting under marital property to be awarded to the wife. This is clearly the best decision, for if the wife did dispose of the painting for $10 worth of goods, she was wasteful of marital property. The master was correct in not excluding the painting from the pool of marital property.

As mandated by subsection 401(d) of the Divorce Code, we have considered *all* relevant factors in reaching our decision concerning the equitable distribution of property. The parties have been married 33 years plus;[7] the husband is 66 years of age, the wife, 55; four children have been reared; both parties are currently suffering from physical illnesses; the husband is disabled and consequently unemployable; the wife's employability is limited,[8] the husband receives nonmarital income of about $1400 a month; the wife earns about $6,000 per annum; her assets include the Orchard Road property; each party has contributed to the acquisition of marital property, as well as dissipated that property; the wife has accepted, in conjunction with her career pursuits, a lower standard of living. Having considered these and other factors, we conclude that the wife shall receive the increased value of the Orchard Road property, all items listed by the master on page five of his report, and one-

7. References to pages are to Notes of Testimony from Master's Hearings.

8. See White v. White, 226 Pa. Superior Ct. 499, 505, fn. 5, 313 A. 2d 776, 780 (1973) (considerations in determining "employability" include amount of time the wife has been out of work, availability of work, relative skills of the worker, health and stamina of the worker, and absence of children in the home).

third of the husband's teacher's retirement pay, to be paid by the husband on a monthly basis. The husband shall receive all items listed by the master on pages 6-7 of his report, life insurance policies on his life, all firearms, and two-thirds of his teacher's retirement pay. All other property and benefits are nonmarital, excluded from equitable distribution.

Although the wife's annual income will remain less than the husband's (unless, of course, she begins to reap much greater financial benefits from her acting career), she also has the added benefit of a substantial asset, the Orchard Road property. Whether she decides to rent or sell it, the rental or interest alone could provide added income of $4,000-$5,000 per annum, increasing her yearly income to about $12,000, compared to the husband's $19,000. Also significant is the source of this relatively large income-producing asset: the husband. Moreover, unless the wife decides to sell or rent the house to the husband, he will be forced to set up housekeeping anew, at the age of 66. Having taken all of these factors into consideration, we believe the distribution of marital property is equitable and proper under the Divorce Code.

## II

The wife has requested that costs of the proceeding be borne solely by the husband. The master, however, recommended that costs be divided equally (M.R. 12). The master's recommendation is adopted.

The Divorce Code provides that "the court may award costs to the party in whose favor the order or decree shall be entered, or may order that each party shall pay his or her own costs, or may order that costs be divided equitably as it shall appear

just and reasonable." 23 P.S. §401(b). The purpose of such an award is "to ensure that a financially dependant spouse will be able to maintain, or defend against, a divorce action." Jack v. Jack, 253 Pa. Superior Ct. 538, 543, 385 A. 2d 469 (1978) (construing the Divorce Law, Act of May 2, 1929, P.L. 1237 sec. 46, as amended, June 27, 1974, P.L. 403, sec. 1, 23 P.S. §46 (repealed), authorizing "reasonable counsel fees and expenses").

"[M]erely because one spouse earns more than the other does not automatically entitle the spouse earning less money to counsel fees. Actual need must be shown in order to justify an award of counsel fees so that both parties are placed 'on a par' in defending their rights. In many cases where both spouses are earning or have access to substantial amounts of money no award of counsel fees should be made to either spouse." Hoover v. Hoover, 288 Pa. Superior Ct. 159, 431 A. 2d 337, 338 (1981). Considering the circumstances of this case and the financial situations of the parties after the division of marital property, we cannot justify one party sharing a greater burden than the other.

ORDER

And now, August 25, 1981, having reviewed the record before us, it is hereby adjudged and decreed that Rosario Sorbello is divorced and completely separated from the bonds of matrimony with Charmian Sorbello. All duties, rights, and claims accruing to either at any time in pursuance of their marriage shall cease and the parties shall, severally, be at liberty to marry again in like manner as if they had never been married.

It is further ordered that alimony be denied to defendant.

It is further ordered that the costs of this proceeding shall be shared equally by plaintiff and defendant.

It is further ordered that defendant be awarded the increase in value of the Orchard Road property, one-third of plaintiff's teacher's retirement pay as provided by the attached special order, and those items listed on page 5 of the master's report, herein incorporated by reference, and adopted insofar as consistent with this opinion and order.

It is further ordered that plaintiff be awarded the life insurance policies on his life, all firearms, two-thirds of his teacher's retirement pay, and those items listed on pages 6-7 of the master's report.

IN RE: DISTRIBUTION OF MARITAL
PROPERTY
ORDER OF COURT

And now, August 25, 1981, pursuant to an opinion filed this date in the above-captioned matter, it is hereby ordered and directed that plaintiff Rosario Sorbello pay through the Domestic Relations Office, P.O. Box 320, Carlisle, Pa. 17013, one-third of his teacher's retirement benefits, currently the sum of $290.25 per month. The first payment shall be due on September 1, 1981, and subsequent payments of $96.75, or one-third of the benefits, whichever is greater, shall be due by the first of every month thereafter. It is further ordered that plaintiff inform the Domestic Relations Office in writing of any change of address or increase in benefits within ten days of such change.